In the Matter of the Revocation of the Last Will and Testament of HOMER A. NELSON, Deceased.

The attestation clause is some proof of the due execution of a will, and where, in addition to it, there is evidence that said clause was read aloud in the hearing of the testator and witnesses, with at least the silent assent of all concerned to its statement of facts, this is sufficient to establish the facts recited.

A request to sign as a witness, made by the person superintending the execution of a will, in the hearing of the testator, and with his silent permission and approval, is sufficient.

The attestation clause to a will contained the usual statement that the person who executed the instrument had signed, published and declared it to be his last will and testament ; it omitted to recite that the witnesses were requested by the testator to sign the will as such. In proceedings to revoke probate of the will, K., the only surviving witness, denied that the decedent made such a request. K. had been a servant of the deceased for many years, and was disappointed at not finding in the will some legacy for himself ; he admitted that B., the other witness, in the presence of the testator, requested him to sign the will, but denied that the decedent in any manner assented, except by silence, and stated

that he was apparently inattentive.  Declarations of the witness were proved to the effect that when he came into the room the decedent said he wanted him to witness his will.  The testator was a lawyer of eminence and ability, who well knew the requirements for its due execution, as did also B., who was also a lawyer, the partner of the decedent.  B. drew the will and superintended its execution.  K. was sent for with a view of his becoming a subscribing witness, either by the testator or with his assent.  B. read the attestation clause aloud, in the presence of decedent and K.  The will was signed by the testator, and both witnesses signed the attestation clause; K. testified that B. then put the will in an envelope and took it away, at the request of the testator, who thereafter recognized it as an existing, executed and completed instrument.  B. died more than twelve years thereafter, and thereupon the will in its envelope was delivered to the testator, who opened the package, examined the instrument and receipted for it as his will.  *Held*, the evidence was sufficient to justify a finding that the will was duly executed.

(Argued January 17, 1894; decided January 30, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 12, 1892, which affirmed a decree of the Surrogate's Court of the county of Dutchess denying and dismissing a petition for the revocation of probate of the last will and testament of Homer A. Nelson, deceased, and ratifying and confirming the prior probate thereof.

The facts, so far as material, are stated in the opinion.

*Martin I. Townsend* for appellants.  The Surrogate's Court erred in admitting proof of what Judge Nelson said from time to time in relation to his alleged will, and of his condition when it was made.  (*Johnson* v. *Hicks*, 1 Lans. 159; *Waterman* v. *Whitney*, 11 N. Y. 161.)  The testatum clause is entirely silent on the question whether Judge Nelson requested either of the witnesses to sign the will as witnesses to it, and Keller's signature to the testatum clause proves nothing on that subject, and if the proponents have actually succeeded in destroying Keller's credibility, they simply stand without any evidence that Judge Nelson, either directly or indirectly, requested anybody to sign the will as a witness. (*Cottrell's Will*, 95 N. Y. 339.)  The failure of Judge Nelson

to request the witnesses to subscribe the will as such, is not compensated by Baker's simple direction to sign. The direction of Baker to the witness to sign the paper could never become a legal substitute for the testator's request without proof that the testator knew of the request, and in some form assented to it. (119 N. Y. 615; *Lane* v. *Lane*, 95 id. 494.)

*E. Countryman* for respondents. The findings of fact, as affirmed in the General Term, if there was any evidence to sustain them, are conclusive in this court; and as such findings are sufficient in law to warrant the probate of the will, they are now decisive of the merits of the controversy. (*Whitmore* v. *Foley*, 125 N. Y. 651; *Hewlitt* v. *Elmer*, 103 id. 156, 161; *In re Cottrell*, 95 id. 329, 333; *In re Bull*, 111 id. 624, 629; *Marx* v. *McGlynn*, 88 id. 357, 369; *In re Ross*, 87 id. 514; *Kingsland* v. *Murray*, 133 id. 170.) It was proven by Keller, the sole surviving witness, who attested the execution of the will, that the scrivener (Mr. Baker) read aloud the attestation clause, and that clause was in fact signed by both the attesting witnesses. (*Peck* v. *Cary*, 27 N. Y. 9; *In re Pepson*, 91 id. 256; *Brown* v. *Clark*, 77 id. 369; *Blake* v. *Knight*, 3 Curtis, 547; *Wright* v. *Rogers*, L. R. [1 Prob. Div.] 678; *Woodhouse* v. *Balfour*, 13 id. 2; *Wright* v. *Sanderson*, 9 id. 149.) The attestation clause, it is true, is defective in one respect, in that it does not recite a request by or on behalf of the testator to the witnesses to attest the execution of the will. But this was evidently a mere clerical error, an inadvertent omission of the scrivener, and that omission is practically supplied by the surviving witness, Keller himself, who testified that the scrivener said to him in the presence of the testator : " I want you to sign this will, or this paper; something like that; to that effect." (*Gilbert* v. *Knox*, 52 N. Y. 125; *In re Phillips*, 98 id. 267.) The surrogate clearly had a right to discredit Keller's testimony and to admit the will to probate in direct opposition to the evidence, even of all the attesting witnesses. (*Tarrant* v. *Ware*, 25 N. Y. 425; *In re Cottrell*, 95 id. 330–340; *In re Kellum*, 52 id.

517.)    There was no error committed in allowing the propo-- nents to contradict and impeach the testimony of Keller as one of the attesting witnesses to the will.  (*Thornton Case*, 39 Vt. 122.)

FINCH, J.    This appeal is from an affirmance by the Gen- eral Term of an order of the surrogate of Dutchess county refusing to revoke the probate of the last will of Homer A. Nelson.    No question is raised as to the capacity of the tes- tator or his freedom from any undue or improper influence, and the whole contest is over the inquiry whether the statu- tory requirements for the due execution of the will were all observed.    That is a question of fact upon which the findings are conclusive unless it appears in the record that there is no evidence tending to sustain them, and our examination of the case must be directed to that inquiry.    It may be narrowed still further.    The will bears the signature of the testator and the attestation clause those of Baker and Keller, the two sub- scribing witnesses.    There is not the least doubt of the genu- ineness of all these signatures.    It is also certain that they were appended on the day of the execution of the will and before Keller left the room, for he says that Baker put the will in an envelope and took it away at the request of the testator, and at least twelve years thereafter, Baker having died, the will in its envelope was delivered to the testator, who opened the package and examined the instrument and receipted for it as his will.    That the testator on March 3d, 1878, which was the date of the attestation, knew perfectly that he was engaged in a testamentary act is evident not only from what occurred in his presence, but from his own later statement of the reason which induced him to make his will on that occasion.    Baker knew the exact nature of the trans- action, for he drew the will and superintended its execution. And Keller knew it, not only from what was said to him, but from his repeated description of the scene as a solemn occa- sion.    The attestation clause was read aloud by Baker in the presence and hearing of the testator and Keller, so that the testator knew what it recited as emanating from him, and

the witnesses what it declared as having occurred in their presence. To all that was thus represented to have been said or done by the testator he assented by the approval of silence, if nothing more, and the witnesses knowing its recitals certified to their truth by their signatures. The attestation clause is always some proof of the due execution of the will (Matter of Will of Cottrell, 95 N. Y. 339), and where beyond its presence the proof is that it was read aloud in the hearing of testator and witnesses with at least the silent assent of all concerned to its statement of facts, it cannot be denied that there is some, and quite per-suasive evidence of the actual occurrence of the facts recited. When Baker read the statement, obviously speaking for the testator and in his behalf, that he had signed, published and declared the instrument in question as and for and to be his last will and testament, his silent assent to the declaration, if he was so silent, furnished evidence of his concurrence and approval: evidence upon which the witnesses at once acted and without hesitation, and which is put beyond the possibility of mistake by the testator's after recognition of the will as an existing, executed and completed instrument. If the attesta-tion clause thus read and adopted had been full and perfect it would have served, in connection with the other proof, to have justified the probate; but it was not full and perfect, owing to the omission of one of the needed requirements, and it is about that one, omitted from the recital, probably by acci-dent, that it is possible reasonably to contend that there was an utter failure of evidence. That omission was of a request by the testator to the witnesses to sign the will as such, and is open to dispute not only because so omitted, but because the surviving witness denies the fact. He admits, however, that Baker, in the presence of the testator, requested the witness to sign the will, but denies that the decedent in any manner assented, unless by silence, and takes from that some of its force by representing him as apparently inattentive. This witness was Judge Nelson's coachman, who had been in his service for many years, but was disappointed in not find-

ing in the will some legacy for himself. His evidence as a
witness was strongly contradicted by his own earlier state-
ment to Mr. Lown that when he came into Judge Nelson's
room the latter said that he wanted him to witness his will.
It is thus certain that either Baker, speaking in behalf of the
testator, or the latter himself made that request, and it is much
the most probable that it came from the testator. Somebody
sent for the coachman with the view of making him a sub-
scribing witness to the will. Mrs. Nelson was not at home,
and Miss Laura Nelson was not present, and does not appear
to have even been aware of what was transpiring. The sum-
mons came from the room where the testator and Baker were
alone together, and must have been directed by the testator's
selection, or, at all events, with his assent, and when Keller
came into the room it is quite certain that one of the two told
him what he was wanted for. If it was Baker, as the witness
testified, that was enough, for in doing so he plainly acted for
the testator with his assent and in pursuance of his selection.
The request to sign is sufficient, if made by the person super-
intending the execution of the will, if in the hearing of the
testator and with his silent permission and approval. That was
held in *Doe* v. *Roe* (2 Barb. 205), and again in *Peck* v. *Cary*
(27 N. Y. 9) and *Gilbert* v. *Knox* (52 id. 128). Judge Nelson
himself was a lawyer of eminence and ability, well knowing
what was needed for the due execution of a will, and Baker
was his partner and fully competent to perform the duty
which he undertook, and it is not a reasonable supposition that
they neglected any essential requirement. The accidental
omission in the attestation might easily occur, and that it
escaped the notice of both serves only to indicate the fatality
which seems to attend the wills of distinguished lawyers.

The proof of Judge Nelson's declarations and acts, occur-
ring after the execution of the will, was admissible to show
his knowledge of the testamentary character of the instrument
and to dispel any possible claim of mistake or imposition.
Similar evidence has often been received, and we can see no
ground on which it should have been excluded.

Taking all the facts together, they warranted the findings of the surrogate, and leave no doubt in our own minds that the will was properly executed.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.