(14 Misc. Rep. 486.)

## In re CAREY'S WILL.

(Surrogate's Court, Oneida County. November, 1895.)

WILLS—EXECUTION—OBSERVANCE OF FORMALITIES.

In a will contest it appeared that testator had written the will on half a sheet of paper, and that the witness clause, written by testator, was after his signature, and extended over to the other side of the paper. Testator signed and acknowledged the will before T., who signed it as a witness at testator's request, and in his presence. T. testified that N., the other witness, then came in, and that testator said he had made his will, and asked N. to sign as a witness, and that T. said to N., "It is his will. I have witnessed it, and he wants you to witness it,"—and that testator had declared the instrument to be his will, and that N. then signed it. T. could not say that N. saw testator's signature, and N. testified that he did not see it. The witness clause contained all the statutory requirements. *Held* sufficient to warrant a finding that testator acknowledged his signature to N., declared to N. that the instrument was his will, and requested N. to sign it as a witness, as required by 2 Rev. St. p. 63, § 40.

Application for the probate of the will of James A. Carey, deceased.　Decedent's daughters filed objections to its probate on the ground that it was not properly executed.　Decree for proponent.

Smith M. Lindsley, for petitioner.
Charles H. Searle, for contestant.

CALDER, S.　James A. Carey died on the 18th day of April, 1890, leaving the instrument here offered for probate, dated the 8th day of March, 1889.　The petitioner and contestant herein are his daughters.　No allegations of mental incapacity or undue influence are alleged in the objections, but some evidence was given tending to cast some reflection upon the executive ability of the decedent in certain transactions; but a careful examination of the evidence given by persons who had known him for many years shows that he was a man of much ability, and seemed well versed in the requirements of the statute in reference to the execution of deeds, mortgages, and instruments of a similar character.　There was some impairment of his hearing, but not so as to seriously affect him at the time of the execution of the will.　It must therefore be conceded that he was capable, mentally, to comprehend the act he did, understood the nature and extent of his property, knew the persons who were the subjects of his bounty, and was unrestrained in the testamentary disposition of his estate.

The objections strenuously urged on behalf of the contestant are that there were fatal defects in the execution of this instrument, and that certain statutory requirements were disregarded.　It is insisted that the instrument was not subscribed by the testator in the presence of each of the witnesses; that it was not acknowledged to each of them, and that the signature was not exhibited to them; that the testator did not request them to sign the will; that they did not sign the same at his request; and that the same was not executed, published, acknowledged, and declared by said testator to be his last will and testament.　The statute provides that every last will and

testament of real and personal property shall be executed and attested as follows:    (1) It shall be subscribed by the testator at the end of the will; (2) such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses; (3) the testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his last will and testament; (4) there shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator.[1] The omission to observe any of these requirements is fatal to the execution of an instrument testamentary in character.    It is not necessary that each requirement of the statute be followed separately, or that its exact words be employed, or that its construction be interpreted in a literal sense; for such an interpretation would in many instances defeat a testator's express direction, and deprive one of participating in another's intended benefaction.    Few witnesses can recall perfectly or describe minutely the exact transaction at the execution of a will; and a long line of cases, unnecessary here to discuss, hold that a will is properly executed if there be a substantial compliance with the requirements of the statute.

    The will is holographic, and written upon a half sheet of foolscap paper, the signature being about two inches from the bottom of the page.    The attestation clause begins upon the line immediately below the signature, and is continued upon the reverse side of the sheet, the names of the witnesses appearing immediately at the end of said clause.    The witnesses, W. Byron Topping and George B. Northrup, were friends of the deceased, and had known him for upwards of 20 years.    It appears that, upon the day the will bears date, testator went to the store of Northrup, in the village of Deansboro, having with him a book, which he opened upon the table before him, sat down, and began to write in Topping's presence.    When he had finished he asked Topping where Northrup was; said he was going West, and was making a will, as he did not know what might happen before he got back.    Northrup was not present.    Carey signed the will in the presence of Topping, acknowledged the signature to be his; said it was his will, and requested him to sign it as a witness, which he did in the presence of the testator.    Northrup then appeared, and, according to Topping's evidence, testator spoke about going West, and said he had made his will, and asked Northrup to sign as a witness.    Topping then said to Northrup: "It is his will. I have witnessed it, and he wants you to witness it."    Northrup sat down to write, took the paper in his hands, saying, "We ought to know how many sheets there are," and then made the remark, "There is one," and signed it at the end of the attestation clause.    The following question was asked Topping by counsel for the proponent:

"Q. You said to Mr. Northrup, in Carey's presence, that the instrument there was the will of Mr. Carey, and that Mr. Carey had so declared it, and

_____

[1] 2 Rev. St. p. 63, § 40.

had requested you and Northrup to sign the same as witnesses? You said that, didn't you? A. Yes, sir."

Topping further testified that he does not think Northrup saw the signature of Carey, although he would not be positive. According to Northrup's evidence, he signed the paper that Carey handed him in the presence of Carey and Topping; that Carey did not say it was his will, but that he asked him to witness a paper; that Topping told him when he was signing that it was the will of Carey; that the testator did not sign the same in his presence, or exhibit his signature. The subscribing witnesses were examined at length by the respective counsel, and, in deciding this controversy, I have endeavored to give it the careful consideration which its importance demands. When Topping said to Northrup, "It is his will. I have witnessed it, and he wants you to witness it,"—it must be presumed from the evidence that Topping acted in behalf of the testator; and, when so acting, it is of the same legal effect as though Carey had spoken the words himself. Gilbert v. Knox, 52 N. Y. 125; Peck v. Cary, 27 N. Y. 9. There can be no contention but that Topping and Carey, as far as their transaction was concerned, fully complied with the requirements of the statute; and Northrup's evidence, taken in connection with that of Topping, impresses me strongly that there was a proper execution of the instrument by Carey in Northrup's presence, and Northrup so attested. Topping is in doubt whether Northrup saw the testator's signature, and Northrup testifies that he did not see the same; but taking the evidence in its entirety, and taking into consideration all the circumstances surrounding the execution of this instrument, I believe the testator exhibited this instrument, and acknowledged his signature to Northrup, making known to him that it was his last will and testament, which was signed by said witness, all of which was done in such a manner as to be a proper observance of the requisite legal formalities, and in conformity with numerous decisions of our courts. The attestation clause is full and complete, being in the handwriting of the decedent, and it would be almost preposterous that a man who seemed to understand the statutory requirements would fail to observe them after he had carefully written them. Northrup testifies that the attestation clause was not read to him, and that he did not read it; yet he knew the nature of the instrument he was attesting. It cannot be possible that a man possessing the executive ability and business experience that he apparently had should attach his name as a witness to the will of another, when he did not know the will had actually been signed by the testator. The recollection of the witnesses must be faulty. This I believe to be the case, without intending to cast any reflection whatever upon the credibility of said witnesses.

The testimony of the subscribing witnesses is generally given great weight, but it is not conclusive. Otherwise the validity of instruments involving the disposition of large estates would often rest upon a treacherous memory, or volition of witnesses to testify. To guard against such a condition, the statute has prescribed and the courts have decided that a will may be admitted to probate against the evidence of the subscribing witnesses, or where, by reason of want of

recollection, they are unable to make the proofs as prescribed by law. Code, § 2620; Orser v. Orser, 24 N. Y. 52; In re Merriam (Sup.) 16 N. Y. Supp. 738; In re Cottrell, 95 N. Y. 329; In re Hunt, 110 N. Y. 281, 18 N. E. 106; In re Nelson, 141 N. Y. 152, 36 N. E. 3. The fact that the two subscribing witnesses were not together when they attested this instrument is immaterial. Hoysradt v. Kingman, 22 N. Y. 372; Willis v. Mott, 36 N. Y. 497. The attestation clause is full and complete, reciting all the formalities required by statute, and it must have some bearing upon the question in controversy. In re Cottrell, 95 N. Y. 335; In re Hunt, 110 N. Y. 282, 18 N. E. 106; In re Nelson, 141 N. Y. 152, 36 N. E. 3. Careful attention has been given to the numerous cases cited by the learned counsel for the contestant, and this decision is not in conflict with them. In those cases some act which the statute required was omitted, so as to cause a fatal defect in the execution. The law is applicable to the facts found in each case. In the present case, taking into consideration the entire evidence, the manifest intention of the testator to execute a will, and all the circumstances surrounding this transaction, no requirement was disregarded, and a valid and complete execution of this instrument must have been performed. A decree may therefore be entered admitting said will to probate.

Decreed accordingly.