In the Matter of the Petition of HUGH KENNEY to Prove the Last Will and Testament of HUGH KENNEY, Deceased.

MARY E. MERKLIN and HARRY KENNEY, by WEBSTER J. OLIVER, Special Guardian, Appellants; HUGH KENNEY, as Executor, etc., of HUGH KENNEY, Deceased, Respondent.

Second Department, July 31, 1917.

**Will — evidence of execution in compliance with statute — when silence and nod by testator not a sufficient request to witnesses to sign — attestation clause.**

Where in a proceeding for the probate of a will it appears that the testator at the time of the execution thereof was in the last stages of chronic alcoholism; that his physicians did not believe him to be rational; that the will was contrary to his fixed testamentary intentions expressed in a will executed about three years before and entertained by him only three months before his death; that the will in question was produced by a son who was the chief beneficiary and there was nothing to show that the testator had any connection with the paper before that time, clear evidence must be presented that the testator understood that the paper signed and witnessed was his will.

The formalities of execution prescribed by the statute must be strictly followed for the purpose of rendering it certain that an instrument is the testator's will. The only way of proving a will is by showing compliance with such requirements.

Evidence examined, and *held*, insufficient to establish that the testator knowingly executed the will or that it was done with the formalities required by statute.

Evidence that a bookkeeper employed by the son read the will and the attestation clause and that the testator nodded when one of the witnesses was asked by the bookkeeper to sign, was an insufficient request under

the circumstances, although silence and a simple nod may satisfy under the statute if the testator is of undoubted mental alertness.

A testator may in making the declaration and request adopt the words of another in any way which evidences such adoption, but in determining whether he did his mental and physical condition, the character of the testamentary disposition and the agency of the chief beneficiary must be considered.

When the witnesses to a will are dead, when they are forgetful or when they are hostile the attestation clause adds weight to slight evidence of regular execution, but it is a mere extrajudicial hearsay statement in a case where the witnesses are apparently friendly to the proponent and are testifying to recent occurrences without any indication of failure of recollection.

When everything that happened at the execution of a will is detailed minutely and the accounts of witnesses, both for the proponent and the contestants, substantially agree, the presence or absence of an attestation clause can have little, if any, weight.

APPEAL by the contestants, Mary E. Merklin and another, from a decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 25th day of January, 1917, admitting to probate the will of Hugh Kenney, deceased.

*Robert H. Koehler,* for the appellant Mary E. Merklin.

*Alfred C. B. McNevin [George K. Hunton* with him on the brief], for Webster J. Oliver, special guardian for the appellant Harry Kenney.

*Charles Goldzier [Nathaniel Tonkin* with him on the brief], for the respondent.

BLACKMAR, J.:

There are certain aspects of this case which require that it should be made clearly to appear that the testator knew that the paper which he signed was a will. He was in the last stages of chronic alcoholism which in eight days ended in death. He was every day, and nearly all the time, subject to the influence of alcohol. Neither of his physicians believed him to be rational. The will was contrary to his fixed testamentary intentions, expressed in a will executed about three years before, and entertained certainly as late as three months before his death. It was produced by the son who was the chief beneficiary, and there was nothing to show that the

testator had any connection with the paper before that time. Even if the evidence justified the finding that he had testamentary capacity, which is at least doubtful, the case required reasonably clear evidence that the testator understood that the paper there signed and witnessed was his will.

The statute (Decedent Estate Law [Consol. Laws, chap. 13; Laws of 1909, chap. 18], § 21) prescribes formalities of execution which must be followed strictly for the purpose of rendering it certain that the instrument is the testator's will. A will cannot be proved in any way but by showing compliance with such requirements. It is necessary, among other requirements, that the testator should declare in the presence of two witnesses that the paper is his will; that he should request the witnesses to whom the declaration was made to sign as attesting witnesses in his presence. No particular words are necessary for the declaration, nor need there be any formality in the request. But the substance of these things must be done. In this case the testator said nothing. He did not with his own tongue declare that the document was his will, nor request the two witnesses to sign. No word of his indicates that he had any conception of what was taking place. The evidence that he made the necessary declaration and request is found only in the fact that the bookkeeper read the will and the attestation clause, and that the testator nodded when one of the witnesses was asked by the bookkeeper to sign. Silence and the simple nod may satisfy the statute if the testator is of undoubted mental alertness; as was the case in *Matter of Nelson* (141 N. Y. 152); but I do not think such evidence sufficient in the case of a testator weakened mentally and physically by alcohol which was wrecking both body and mind and bringing him to speedy death, who was nervous, trembling and agitated to the point of tears, when the act which he is doing nullifies a long-cherished plan of equal distribution of his property among his ten children, and when the scene is staged by his eldest son, who takes nearly half the estate under the new will. A testator may, in making the declaration and request, adopt the words of another, in any way which evidences such adoption; but in determining whether he did, the mental and physical condition of the testator, the character of the testamentary

disposition, and the agency of the chief beneficiary must be considered. When the witnesses are dead, when they are forgetful or when they are hostile, an attestation clause adds weight to slight evidence of regular execution (*Matter of Cottrell*, 95 N. Y. 329); but I apprehend that it is a mere extra-judicial hearsay statement in a case where the witnesses are apparently friendly to the proponent and are testifying to recent occurrences without any indication of failure of recollection. When everything that happened at the execution of the will is detailed minutely, and the accounts of witnesses both for the respondent and the contestant substantially agree, the presence or absence of an attestation clause can have little, if any, weight. If the execution had been supervised by an expert lawyer, it would be easier to believe that legal formalities had been followed; but I think that all who are experienced in the practice and administration of the law recognize that with laymen, especially those of slight education, little attention is paid to formal legal expressions. That was the case of this will. Some lawyer had drawn it and placed it in the hands of the son Hugh, and he, with workmen from the shop and a bookkeeper, undertook to supervise its execution. Three of them testified, and there is no reason to think that they did not remember what took place, or that they did not intend to tell the truth. I think we must look to the evidence to learn the way in which the ceremony was gone through without regard to the attestation clause. From the facts so established, I believe that the inference cannot be fairly drawn that the testator knowingly executed the will propounded, or that it was done with the formalities required by statute.

The decree of the Surrogate's Court of Kings county should be reversed, and a new trial granted before a jury in the Surrogate's Court, costs to abide the event.

JENKS, P. J., STAPLETON, RICH and PUTNAM, JJ., concurred.

Decree of the Surrogate's Court of Kings county reversed, and a new trial granted before a jury in the Surrogate's Court, costs to abide the event.