In the Matter of the Estate of EMERY ABARE, Deceased.

Surrogate's Court, Clinton County, August 12, 1931.

*Victor F. Boire,* for the proponent Josephine Abare.

*Andrew W. Ryan,* for Henry E. Abare, contestant.

HARRINGTON, S. By stipulation of counsel a jury trial in this matter was waived and the determination of the issues left to this court. Decedent died on September 29, 1930. The instrument offered for probate as his last will and testament is dated September 19, 1930. By this instrument the decedent gave all of his property to his wife, Josephine Abare. He was survived by his said wife and by one son, Henry E. Abare, the contestant. It appears that the testator and Josephine Abare had been married about fifteen years. She was the second wife of the decedent and the step-mother of Henry E. Abare, the contestant herein. The approximate value of the total estate is $2,000. As stated in the brief by counsel for contestant, the sole question before this court is whether the instrument offered for probate was executed in accordance with section 21 of the Decedent Estate Law.

The instrument in question was prepared by counsel for the petitioner, and was witnessed by him and by Mrs. Ida Rabideau, a niece of the decedent. There is a conflict in the testimony

of these subscribing witnesses as to what occurred upon the execution of the will by the decedent. The instrument was prepared on the usual single sheet printed form for a will. The upper half of the back of the sheet has the usual printed form for the appointment of an executor, the signature of the testator, the attestation clause, and the two lines for the signatures of the attesting witnesses. Without quoting in detail the testimony of Mrs. Rabideau, the substance of her testimony is as follows: On the day the will was executed, the proponent herein requested Mrs. Rabideau to come to her house to witness the testator's will; upon arriving at the house, Mrs. Rabideau met Judge Boire and Mrs. Abare in the living room and saw the testator in his bedroom; the testator was standing up and apparently looking for some papers; Mrs. Rabideau made some casual remarks to the testator after she entered; she states that testator was not at any time in the room where the instrument is alleged to have been executed; that the instrument was not declared by the testator or any one else to be his last will and testatment; that she was not told by any one the nature of the instrument, that she was not requested by the testator to sign the instrument, and that she did not see either the testator's signature or the signature of Judge Boire, one of the attesting witnesses, at the time she signed such instrument. Her explanation as to why she could not see either the testator's signature or that of Judge Boire, at the time she signed the instrument, is that Judge Boire held the will in such a folded position that no part of it was visible to her except the line upon which she was asked by Judge Boire to sign her name. Whether or not Mrs. Rabideau's testimony is based upon fact, failure to recollect the details of the occasion, or a desire upon her part, for any reason, to forget such details may be indicated to some extent by her testimony as follows: " By Judge Boire: Q. At the time the will was signed did any one ask you to sign your name? A. You asked me to put my name on that line, said sign your name on that line. Q. Did I tell you that it was a will? A. I *don't remember*. Q. I didn't tell you that it was a will? A. I *don't know*, I supposed it was a will, she said uncle was to make his will. Q. I am asking you, did I tell you that this was a will? A. *No*. Q. Did Emery Abare tell you that this was his will? A. No. Q. There was nothing said at that time as to what kind of a paper it was? A. No. Q. Are you sure? A. Yes. Q. Was Emery Abare in the bedroom all the time you were there? A. Yes, sir. Q. How did you know he was there? Did you see him? A. When I was ready to go uncle was just coming out. Q. Was he dressed? A. *I couldn't tell you because I didn't pay no attention.* He was coming out of the bedroom just as I was

going out of the dining room. Q. You don't know whether he was in his night clothes or whether he had an overcoat and cap on? A. I know he didn't have his overcoat or cap on. Q. But you don't know that he didn't have his night clothes on? A. *I don't know, I didn't pay attention.* By the Court: Q. How much of the paper could you see when he said sign your name? A. I couldn't see anything, it was folded. Q. Think what I say, the top of the document was just the way it is now, was Judge Boire's hand on top of it? A. *I can't remember.* Q. Did you see Judge Boire's name there? A. *No, sir, I might have.* Q. You aren't certain about that? A. *I didn't pay any attention.* Q. That isn't what I asked you, do you know? Was Judge Boire's signature there? A. *No, I don't know.* Q. Would you say that you didn't see his signature there? A. *I wouldn't say I did or didn't.* Q. Did you or did you not see the signature of Emery Abare? A. No I did not. Q. You are positive? A. I am, I didn't see anything else. Q. Did Judge Boire greet you when you came in? A. We exchanged a few words. Q. He didn't tell you what you were there for? A. *I don't remember* him saying anything about that. Q. Would you say that he didn't tell you what you were there for? A. He didn't tell me, asked me to sign my name. Q. Was your uncle in bed? A. No, he was standing up looking for papers? Q. In the bedroom? A. Yes. Q. Did he come out of the bedroom? A. No, *not entirely.* Q. What do you mean by entirely? A. *He didn't come out, I mean.*"

Judge Boire gave in detail his conversation with the testator at the time he prepared the instrument offered for probate. He also testified that at the time the instrument was executed the testator was sitting in the same room with the attesting witnesses; that he asked the testator whether he declared the instrument to be his last will and testament and the testator said " yes; " that he asked the testator whether he desired Mrs. Rabideau and himself to act as witnesses, and the testator said " yes; " that Mrs. Rabideau was in such a position that she could see the testator sign the instrument; that the signing of the instrument by the testator and the witnesses was at the same table and at the same time; that the signature of the testator and that of himself was in view of Mrs. Rabideau when she signed as a witness.

Before a will is admitted to probate, the surrogate must inquire into all the facts and circumstances and must be satisfied with the genuineness of the will and the validity of its execution. (Surr. Ct. Act, § 144). If a subscribing witness has forgotten the occurrence or testifies against the execution of the will, the will may nevertheless be established, upon proof of the handwriting of

the testator and of such other circumstances as would be sufficient to prove the will upon the trial of an action.   (Surr. Ct. Act, § 143.) There is a conflict in the testimony of the two subscribing witnesses as to what occurred upon the execution of this instrument.   It cannot be overlooked that Mrs. Rabideau is a cousin of the contestant, who will inherit part of decedent's estate in case the instrument in question is not admitted to probate.   She had never previously acted as a witness to a will.   Her testimony, as herein quoted, is not positive until the same question is propounded to her several times.   She could not remember whether the testator was dressed in his night clothes; she could not remember how Judge Boire held the instrument, although she asserts that it was so folded that nothing could be seen except the line upon which she was asked to sign; upon further questioning she admitted that she might have seen Judge Boire's signature; later she stated that she did not pay any attention; and finally she admitted that she did not know whether it was there or not; she could not remember whether Judge Boire told her what she was there for; she at first stated that she did not remember and later that she did not know whether Judge Boire told her that the instrument was a will; later she became positive and said that he did not tell her.   Her testimony that the testator was in his bedroom during the time she was there and seemed to be looking for some papers is explained by Judge Boire's testimony to the effect that after the instrument was executed, the testator did go to his bedroom to find some insurance policies to deliver to Judge Boire.   It seems quite possible that this incident may have caused Mrs. Rabideau, at the time she was examined as a witness, to have believed that the testator was at all times absent from the room when the instrument was executed.   In any event the manner of Mrs. Rabideau's testimony was such as to impress this court that she either could not recall accurately whether the necessary statutory requirements were taken for the proper execution of this instrument as a will, as testified to by Judge Boire, or that she was, for some reason unexplained, not testifying correctly as to matters that were within her knowledge. Such impression is particularly evidenced by her testimony as to the manner in which Judge Boire held this instrument at the time she signed as a witness.   Judge Boire is a lawyer with some thirty years' experience.   He was surrogate of Clinton county for twelve years.   Both as a lawyer and as former surrogate of that county, he has had a great deal of experience in the execution and probate of wills.   There is nothing about the nature of this instrument that is in any way peculiar.   It purports to dispose of a very small estate to the testator's widow to the exclusion of an only child,

a son, who is a married man of middle age. There is nothing about the contents of the instrument or the relationship of the parties concerned that would indicate that Judge Boire would endeavor to so fold this instrument as to make it impossible for Mrs. Rabideau to see the signatures of the testator and himself. From the testimony of Judge Boire it clearly appears that the requirements of section 21 of the Decedent Estate Law were fully carried out in the execution of this instrument. In *Matter of Laudy* (161 N. Y. 429, 433) the court said: " In a case where there is no claim of fraud, if the signature is there and is visible, and the witnesses hear the acknowledgment thereof and the declaration that the instrument is the last will and testament of the person so acknowledging, but they do not look closely to see the signature thus acknowledged, although it is before their eyes, the will should not be refused probate because those persons are ignorant, careless or indifferent, for the testator would have done his part and the statute would have been substantially complied with. An inflexible rule that the witnesses must remember that they not only saw, but recognized and identified, the signature of the testator at the time of acknowledgment, would sometimes defeat the object of the statute and lead to injustice." From the testimony of Judge Boire and from the improbability of the accuracy of the testimony of Mrs. Rabideau on this point, I must find that both the signatures of Mr. Abare and Judge Boire were visible to Mrs. Rabideau at the time she signed as a witness.

There is a presumption of fact of the compliance with the requirements of the statute in relation to the execution of wills, where they are executed under the supervision of an experienced person. (*Matter of Cottrell*, 95 N. Y. 329, 339; *Matter of Kindberg*, 207 id. 220, 228.) Judge Boire is such an experienced person. The request to the witness to sign as such is sufficient, without having the testator personally make such request, if the same is made by the person superintending the execution of the will if in the hearing of the testator and with his silent permission and approval. (*Matter of Nelson*, 141 N. Y. 152, 157.) I am satisfied from Judge Boire's testimony that this requirement was duly complied with.

The burden of proving the genuineness and due execution of a will rests upon the proponent. (*Delafield* v. *Parish*, 25 N. Y. 1; *Matter of Cottrell, supra; Dobie* v. *Armstrong*, 160 N. Y. 584, 593; *Matter of McDonough*, 201 App. Div. 203, 205.) But as stated in *Matter of Cottrell* (*supra*, at p. 336), " the determination of the question of fact involved in the inquiry as to whether a will has been properly executed or not is governed by the same rules which control in the trial of other questions of fact." This would

seem to indicate that the proponent must establish his case only by a fair preponderance of evidence. This is particularly apparent in view of the fact that section 142 of the Surrogate's Court Act authorizes a surrogate to admit a will to probate upon the conditions therein mentioned, even though some of the witnesses testify against the execution of the will. The cases also uphold the power of a surrogate to admit a will to probate even against the adverse testimony of some of the attesting witnesses. (*Matter of Cottrell, supra; Matter of Bernsee*, 141 N. Y. 389, 394; *Matter of May*, 241 id. 1, 4; *Matter of Baldwin*, 216 App. Div. 111, 112, affd., without opinion, 243 N. Y. 646.)

To refuse to admit this will to probate would require this court to accept the testimony of Mrs. Rabideau as being true and that of Judge Boire as being false; to accept the testimony of a woman who had never before acted as a witness to a will, and a relative of the contestant, in preference to the testimony of an experienced attorney with reference to an instrument which purports to be and in fact is a very simple document. The testimony of Judge Boire was clear and direct, while that of Mrs. Rabideau impressed the court as indefinite and uncertain. Her testimony as to the manner in which the instrument was held by Judge Boire, so as to prevent her from seeing the signatures of the testator and Judge Boire would not seem from the circumstances of the case to be correct. Such testimony compels this court to question the veracity of her other testimony relating to this matter. I am convinced that the proponent has established by a fair preponderence of evidence that the formalities of section 21 of the Decedent Estate Law were complied with in the execution of the instrument offered for probate. A decree may be submitted admitting this instrument to probate.

Prepare decree accordingly.