IRA C. BURGAN et al., Appellants, v. PAUL KINNICK, Executor et al., Appellees.

No. 44324.

OCTOBER 18, 1938.

REHEARING DENIED FEBRUARY 17, 1939.

Graham & Graham, F. H. Cooney, and Dalton & Dalton, for appellants.

Reynolds, Meyers & Tan Creti, for appellees.

RICHARDS, J.— Plaintiffs, heirs at law of Simon Burgan, deceased, brought this law action to set aside the probating of an instrument purporting to be his last will and testament. The petition alleged mental incompetency of decedent to make a

will, and the exerting of undue influence upon him by the defendants who were named in the instrument as sole beneficiaries. The petition also alleged in substance that decedent did not sign or execute the instrument and denied that the said will was ever signed or executed by the decedent, and that same is not his last will or testament. Defendants contend in this court that these latter allegations do not raise the question of due execution of the instrument as decedent's last will and testament. But the theory on which the case was tried in the court below appears to have been that the issue of due execution was raised by plaintiffs' petition. For defendant moved to strike these allegations on the ground that the petition shows that the will had been admitted to probate, and thereby its due execution had been conclusively established, the pleading therefore tendering an issue which had been adjudicated against the plaintiffs. The court overruled this portion of the motion and upon the trial of the case evidence was introduced by both parties on the issue of due execution. The only objection made by defendants to evidence of that character was that the due execution of the will had been fully adjudicated by the prior allowance of the instrument to probate. We are satisfied the question of due execution was an issue to be determined, and that Wendt v. Foss, 161 Iowa 122, 140 N. W. 881, and In re Estate of Mott, 200 Iowa 948, 205 N. W. 770, cited by defendants are not controlling. At the close of plaintiffs' testimony, upon defendants' motion, the court eliminated from consideration by the jury two grounds of contest, namely, the alleged undue influence and the alleged lack of due execution. The remaining issue of mental incompetency was submitted and the jury found for the defendants. From the judgment thereon plaintiffs appealed.

One of the assignments of error grows out of the sustaining of defendants' motion to withdraw the issue of due execution. The portion of the motion with respect thereto sets up that the uncontradicted testimony shows that the instrument was executed in the manner required by law. Plaintiffs claim there was error in sustaining this ground of the motion in that the evidence did not so show, but on the contrary the record at least generated a jury question whether there had been due execution. Discussion of the question will be simplified if we first make some references to the evidence.

The instrument in question bears date February 3, 1936,

though in fact the transaction out of which the instrument arose took place between 4 and a little after 6 o'clock on Sunday morning, February 3, 1935. Decedent died at about 8 o'clock in the evening of the same day. He was about $92\frac{1}{2}$ years old. The immediate cause of his death according to Dr. Wolfe, defendants' witness, was coronary disease, probably a rupture of a blood vessel at the heart. The attack had come upon decedent during February 2, 1935. Intense pain resulted and continued on account of which the physician administered drugs, making repeated calls upon decedent beginning on February 2 and ending shortly before he died on February 3. Previously from October 14, 1934, to January 18, 1935, decedent had been a patient, kept in bed, under treatment in a hospital in Carroll, where two electro-coagulation operations had been performed to relieve an obstruction of the bladder resulting from an enlarged prostate gland. He was also suffering from well advanced hardening of the arteries. From the hospital he was returned to his home on January 18, 1935, and was under the care of defendants Blanchard until his death. The Blanchards had lived for several years as tenants of decedent, occupying a small house on his farm. They moved into decedent's home a week or two before he was returned from the hospital. Driving an automobile to Coon Rapids, a distance of 8 miles from the Burgan home, and arriving there at about 4 o'clock in the morning on February 3, 1935, defendant Clarence Blanchard awoke one Kinnick and Dr. Wolfe in order that they might come to the Burgan home to draw Burgan's will. They complied with Blanchard's request, and accompanied him to Burgan's home. Kinnick was to be the scrivener. At the Burgan home he proceeded to write an instrument, and before he had finished his task Blanchard went to the home of Albert Annear, arriving there about 6 o'clock. Annear had not yet arisen. He testified that Blanchard "told me he wanted me to come; he wanted to use me a while." Annear dressed and returned with Blanchard in the latter's car to the Burgan home. On the way Blanchard told Annear that he had been down after Dr. Wolfe and Kinnick. It was still dark. In the house Annear saw Burgan lying in a bed in the northwestern room of the house. Besides the bed there was in the room a stand with a lamp on it and a cot and chairs. The bed was in the northwestern corner of the room. Burgan was very low according to Dr. Wolfe. At about that time Kinnick completed writing the

instrument which is the one involved herein, and it was taken from the dining room where it had been written, into the bed room. After Burgan started to write his name on the instrument Kinnick put his hand over Burgan's hand and finished the signing. Dr. Wolfe was standing by the bed or holding the lamp. Burgan had been propped up to do the signing and after that was over with "he sunk back on the pillow" and the witness Annear heard him say nothing thereafter. The instrument was then taken out into another room and there signed by Annear, and seemingly also there signed by Dr. Wolfe, purportedly as the witnesses to the will. Although this signing by the witnesses was in the same house, in an adjoining room, the testimony of Annear was specific that it was done where Burgan could not have seen it being done. Defendants point out no denial of this specific fact in the record, and we have found none. We have repeatedly held that a will, to have been properly executed, must have been signed by the subscribing witness *at the request of the testator*. Hull v. Hull, 117 Iowa 738, 89 N. W. 979; In re Will of Droge, 216 Iowa 331, 249 N. W. 209. Such request need not be formally made:

"It seems to be sufficient that in the presence of the testator and at his request a third person asked the witnesses to attest the execution of the will, and that such request is, in the presence of the witnesses, approved of by some sign or act on the part of the testator, and that the witnesses, with the knowledge of the testator, and in response to such request, signed their names. Bates v. Officer, 70 Iowa 343, 30 N. W. 608; In re Hulse's Will, 52 Iowa 662, 3 N. W. 734; Appeal of Canada, 47 Conn. 450; Gilbert v. Knox, 52 N. Y. 125; Denny v. Pinney's Heirs, 60 Vt. 524, 12 Atl. 108. Indeed it is settled that not even an act or motion indicating acquiescence by the testator in the request to the witnesses is necessary, where it is made in his presence, and he knows that the witnesses are signing in response to such request, and makes no objection. Under such circumstances his silence is a sufficient indication that the request is by his authority. In re Nelson's Will, 141 N. Y. 152, 36 N. E. 3; Harp v. Parr, 168 Ill. 459, 474, 48 N. E. 113; Bundy v. Mc-Knight, 48 Ind. 502; Inglesant v. Inglesant, L. R. 3 Prob. & Div. 172." Hull v. Hull, 117 Iowa 738, 89 N. W. 979, 981. In the in-

stant case there was no acquiescence by act or motion of the alleged testator or by failure to make objections, under circumstances such as the last cited authority mentions, if the jury believed the testimony that there was no signing by witness Annear that Burgan saw or could have seen. And it is undisputed that the request that Annear sign as a witness was Blanchard's request that Annear do so. Upon this state of the record defendants could not claim more than that it was a jury question whether Annear had been in any manner requested by decedent to witness the instrument. The question of due execution of this instrument as a will should not have been withdrawn from the jury.

The record suggests a further question whether there may have been failure of proper execution by reason of the witnesses not signing the instrument in the presence of the testator or at least in his visual presence. That element is a legislative requirement in nearly all jurisdictions. See Iowa Law Review, vol. 14, page 15, vol. 16, page 561. In Iowa and perhaps two or three other states this requirement is not found in the statutes. But in construing the Iowa statutes respecting wills this court observed, in In re Boyeus, 23 Iowa 354, that the codifiers seemed studiously to avoid surplusage, and to content themselves in giving, in as few words as possible, the rule to govern in the particular case, and it is to be noted in the Boyeus case it was held that though not required by our statutes it is necessary, to the proper execution of a will, that the witnesses subscribe their names to the instrument. The case also held that these subscribed names of the witnesses become a part of the writing. If so, it might be argued that a testator has not had to do with the execution of the instrument as a completed will, if the subscribing by the witnesses is something subsequent and apart from his own acts and perception. It might appear to be leaving it to the subscribing witnesses rather than to the testator to determine whether and when the instrument might become a will. In Hull v. Hull, 117 Iowa 738, 89 N. W. 979, there is at least the inference that the signing by the witnesses must be in the presence of the testator in order that there be due execution.

On account of the error in not submitting the issue of due execution of the alleged will the judgment is reversed. There

appears no necessity for considering other alleged errors.—Reversed.

SAGER, C. J., and KINTZINGER, MILLER, DONEGAN, and HAMILTON, JJ., concur.