[S. F. No. 6937. In Bank.—February 15, 1915.]

In the Matter of the Estate of HANNAH M. CULLBERG, Deceased.

WILL—CONTEST TO PROBATE—UNSOUNDNESS OF MIND—PRELIMINARY PROOF OF EXECUTION.—On a contest to the probate of a will on the sole ground of the unsoundness of mind of the testator, it is proper for the court to require the proponent to make a preliminary *prima facie* showing of the due execution of the will, and to permit the contestant to cross-examine the witnesses regarding the details of the alleged execution.

ID.—SOUNDNESS OF MIND PRESUMED.—A testator's soundness of mind is presumed in the absence of evidence disproving it.

ID.—EXECUTION AND ATTESTATION OF WILL EVIDENCED BY CONDUCT—ABSENCE OF SPOKEN WORDS.—It is not necessary to the due execution of a will that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration

and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and action, although there is no declaration in words to that effect. In the present case, the conduct of the testatrix and the other circumstances attending the making of the will are held sufficient to make a *prima facie* showing of its due execution and attestation.

APPEAL from an order of the Superior Court of Alameda County denying probate of a will. William S. Wells, Judge.

The facts are stated in the opinion of the court.

Gibson & Woolner, A. J. Monroe, and E. Lyders, for Appellants.

Chapman & Trefethen, for Respondents.

SLOSS, J.—This is an appeal from an order denying probate of a paper claimed to be the last will of Hannah M. Cullberg, deceased.

The petition for admission to probate was filed by Isaac Cullberg, Jr., named in the alleged will as executor. Certain of the heirs at law filed a contest, specifying unsoundness of mind as their sole ground of contest.

When the matter came on for hearing the court required the proponent to make preliminary proof of the execution of the will. The subscribing witnesses and the proponent were called and examined. Over the objection of the proponent, the contestants were permitted to cross-examine these witnesses. At the conclusion of their testimony the court announced that it was satisfied that the will was not properly executed, but expressed its willingness to hear testimony on the issue of the testatrix's soundness of mind. Under these circumstances, the proponent declined to offer further testimony, and an order was entered denying probate. This order recited that the testatrix did not declare to the attesting witnesses that the instrument was her will, and that she did not request said witnesses to sign as witnesses.

Although the contestants had the burden of proof on the issues raised by their contest, the court acted properly in first calling for a *prima facie* showing of due execution. (*Estate of Latour*, 140 Cal. 414, 437, [73 Pac. 1070, 74 Pac. 441].) While this was not an issue presented by the contest, the court

could not admit the will to probate without a showing that it had been executed according to the statutory requirements. The contestants were not, strictly speaking, parties to this preliminary inquiry, but we cannot see that the court violated any substantial right of the proponent by permitting the contestants to cross-examine the witnesses regarding the details of the alleged execution. Whether the court questioned these witnesses itself, as it undoubtedly had the right to do, or permitted the contestant's attorneys to aid in the inquiry, is not a matter of serious moment.

The only question remaining is whether the evidence justified the court's finding that the will had not been duly executed. There is no merit in contestants' claim that the order may be sustained on the ground of want of proof of testamentary capacity. Soundness of mind is presumed, in the absence of evidence disproving it, and the showing before the court was not such as to overcome the presumption. Furthermore, the court made it entirely clear that its ruling was based solely on the ground of want of execution. It did not assume to pass, even preliminarily, on the issue of soundness of mind.

The testimony of the persons present when the will was signed varied in some particulars. But there was little, if any, conflict on the facts which we regard as essential. Taking the version most favorable to the claim of the contestants, the showing was, briefly, as follows: Mrs. Cullberg, the testatrix, was of the age of eighty years, or more. She was in feeble health, and was residing at Oakland with her husband, Isaac Cullberg, who was some years older, and was in an even more precarious physical condition. Both husband and wife were under the medical care of Dr. Clara M. Holmes (now Dr. Holmes-Brazelton), one of the subscribing witnesses. A nurse, Mrs. Nettie F. Bowen, was attending the husband. The proponent, Isaac Cullberg, Jr., was a nephew of Isaac Cullberg. On the morning of the day the will was signed, Dr. Holmes informed Isaac Cullberg, Jr., that the old gentleman was near death, that his wife might not long survive him, and that if she wanted to arrange her affairs, she had better have it done at once. The nephew consulted Mrs. Cullberg, and was told by her that she wanted to make a will. She referred him to certain papers in a safe deposit box, handed him the key to the box, and directed that a will be

drawn as indicated by these papers.  He obtained the papers, had a will drawn by an attorney, and took the draft back to the home of Mrs. Cullberg.  He, Dr. Holmes, and Mrs. Eberts, a niece of Mrs. Cullberg, went into Mrs. Cullberg's room.  The will was handed to Mrs. Eberts, who began to read it aloud.  After reading a part of the paper, she said she could not go on, as she was overcome by emotion.  She left the room, and Mrs. Bowen was called.  The only persons then in the room were Mrs. Cullberg, Isaac Cullberg, Jr., Dr. Holmes, and Mrs. Bowen.  The will was handed by Mrs. Cullberg to Dr. Holmes, who proceeded to complete the reading of it aloud.  The paper contained an attestation clause in the usual form, declaring that the foregoing instrument was, on its date, by Hannah M. Cullberg, "signed and sealed and published as, and declared to be her last will and testament, in the presence of us, who, at her request and in her presence, and in the presence of each other subscribed our names as witnesses thereto."  This, too, was read aloud by Dr. Holmes.  Mr. Cullberg then indicated to Mrs. Cullberg the place for her signature.  She signed.  He then asked Dr. Holmes and Mrs. Bowen to sign under the attestation clause, and they did so.  During the entire proceeding, according to the testimony of Dr. Holmes, not a word was spoken by Mrs. Cullberg.

Notwithstanding the silence of Mrs. Cullberg, we think the court should have found that due execution of the will had been shown.  As we have very recently had occasion to say, it is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such.  It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and action, although there is no declaration in words to that effect.  (*Estate of Silva, ante,* p. 116, [145 Pac. 1015].)  Unless Mrs. Cullberg was incapable of understanding what was going on—and this was not shown and is not presumed —the whole course of proceedings was inconsistent with any other conclusion than that she intended to have those present know that she gave effect to the paper as her will, and that she desired Dr. Holmes and Mrs. Bowen to sign it as attesting witnesses.  It was perfectly apparent that Isaac Cullberg, Jr., was acting in her behalf for the purpose of assist-

ing her to make a will. When he had her sign the paper which had been read, and then asked the physician and the nurse to sign at the end of the attestation clause which had also been read, her silent acquiescence was, under the circumstances, open to no other interpretation than that she joined in or approved the declaration and request which had been made on her behalf. The courts have, of course, no right to dispense with proof of any of the statutory requirements for the making of wills (*In re Walker,* 110 Cal. 387, 390, [52 Am. St. Rep. 104, 30 L. R. A. 460, 42 Pac. 815]), but, in determining what is required, regard should be had to the essential purpose of the various provisions, rather than to a strict and rigid reading of the words used by the legislature. And so it has generally been held that, under statutes like ours, the declaration by the testator that the document is his will, and his request for its attestation, need not be stated in exact terms, but may be implied from his conduct and the attendant circumstances. (40 Cyc. 1115; *Coffin* v. *Coffin,* 23 N. Y. 9, [80 Am. Dec. 235] ; *Rogers* v. *Diamond,* 13 Ark. 474, 487; *Moore* v. *Moore,* 2 Bradf. (N. Y.) 261, 265; *Doe* v. *Roe,* 2 Barb. (N. Y.) 200; *Savage* v. *Bowen,* 103 Va. 540, [49 S. E. 668] ; *Conrades* v. *Heller,* 119 Md. 448, [87 Atl. 28] ; *In re Miller's Estate,* 37 Mont. 545, [97 Pac. 935].) The cases cited afford examples of the circumstances which will give rise to the inference of declaration and request. In most of them facts parallel to those before us are held to be sufficient. In *Hull* v. *Hull,* 117 Iowa, 738, [89 N. W. 979], the court, in speaking of the evidence necessary to establish attestation, says that "it seems to be sufficient that in the presence of the testator and at his request a third person asked the witnesses to attest the execution of the will, and that such request was, in the presence of the witnesses, approved of by some sign or act on the part of the testator, and that the witnesses, with the knowledge of the testator and in response to such request, signed their names. Indeed it is settled that not even an act or motion indicating acquiescence by the testator in the request to the witnesses is necessary, where it is made in his presence, and he knows that the witnesses are signing in response to such request, and makes no objection. Under such circumstances his silence is a sufficient indication that the request is by his authority." (See, also, *Matter of Nelson,* 141 N. Y. 152, [36 N. E. 3] ; *Harp* v. *Parr,* 168 Ill. 459, [48 N. E.

113] ; *Peck* v. *Cary*, 27 N. Y. 9, [84 Am. Dec. 220] ; *Bundy* v. *McKnight*, 48 Ind. 502; *Inglesant* v. *Inglesant*, L. R. 3 Prob. & Div. 172.)

We are not unmindful of the consideration that the question of due execution is one of fact, and that its determination by the court below is not to be overthrown unless that determination is without support in the evidence. But we are satisfied that under the undisputed evidence, and on a correct construction of the statute, only one conclusion, that of due execution, could be drawn. The court below should have held that the proponent had met the requirements of a *prima facie* showing, and should have proceeded to a hearing of the contest on the issue of soundness of mind.

The order is reversed, with directions to the court below to proceed in accordance with this opinion.

Shaw, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.