[S. F. No. 9122.　Department Two.—August 25, 1919.]

In the Matter of the Estate of ALICE DOW, Deceased. GEORGE E. CASEY et al., Appellants, v. GEORGE E. HANLEY et al., Respondents.

[1] ESTATES OF DECEASED PERSONS — EXECUTION OF WILL — SUBSCRIBING WITNESSES.—In the execution of an ordinary written will, it is not necessary that the subscribing witnesses shall sign in the presence of each other, and section 1276 of the Civil Code does not so require.

[2] ID.—WILL CONTEST—LEGALITY OF EXECUTION—CONFLICT OF EVIDENCE—FINDING—APPEAL.—In a contest of a will on the ground that the same was not executed as required by law, where the evidence is conflicting as to whether or not one of the subscribing witnesses signed the will when the testatrix was asleep, the finding of the trial court upon the question is conclusive on the appellate court.

[3] ID.—EVIDENCE—TESTIMONY OF SUBSCRIBING WITNESS—DISCREDIT OF ACT OF ATTESTATION.—In such a contest, it is the duty of the trial court to "closely scrutinize" the testimony of a subscribing witness in so far as such testimony tends to discredit the solemn act of attestation.

[4] ID.—PRESUMPTION OF SOUNDNESS OF MIND—EFFECT AS EVIDENCE.— In such a contest, the presumption that at the time of the execution of the will the testatrix was of sound mind justifies the conclusion, in the absence of affirmative and credible evidence to the contrary, that she was neither unconscious nor asleep during the execution of the will.

[5] ID.—REQUEST TO ATTEST WILL.—A request to attest a will as a subscribing witness may be implied by acquiescence in the request of another that the will be signed.

APPEAL from a judgment of the Superior Court of Alameda County.   Lincoln S. Church, Judge.    Affirmed.

The facts are stated in the opinion of the court.

James H. Boyer for Appellants.

Pierre A. Fontaine and W. J. Hennessey for Respondents.

WILBUR, J.—This is a contest over the will of the deceased, on the ground that the same was not executed as required by law.   The will having been admitted to probate, contestants appeal, basing their appeal upon three grounds: (1) That the subscribing witnesses did not sign the attesting clause to said will in the presence of each other; (2) That the finding of the trial court that the subscribing witness, Jennie Kinsman, signed the attesting clause while in the presence of the testatrix is not supported by the evidence; (3) That the finding that the subscribing witnesses signed at the request of the testatrix is not sufficiently supported by the evidence.

[1]   With reference to the first contention, it is sufficient to say that section 1276 of the Civil Code does not require that the subscribing witnesses shall sign in the presence of each other.   The requirement in that regard is: "There must be two attesting witnesses, each of whom must sign the same as a witness, at the end of the will, at the testator's request and in his presence."   The supreme courts of New York and Connecticut, under similar statutes, have held that it is not required that the witnesses sign in the presence of each other. (*Hoysradt* v. *Kingman*, 22 N. Y. 372; Gaylor's Appeals, 43 Conn. 82; 1 Williams on Executors, 93; 6 Surg. Real Property, St. 342; 1 Jarman on Wills, 85.)   There is nothing in *Estate of Toomes*, 54 Cal. 509, [35 Am. Rep. 83], and *Estate of Cartery*, 56 Cal. 470, in conflict with this view.   The question was not there involved.

The evidence was sufficient to sustain the finding that the witnesses were requested by the testatrix to sign the same as subscribing witnesses.   One of the witnesses, Belle Brush, testified: "At the time she signed this document she said it was her will.   Mrs. Dow requested me and the other witness to sign her will as a witness and I signed my name as a witness." On cross-examination, in detailing the circumstances, she

said: "I went in the room and she asked me if I would sign her will. . . . I think Mrs. Dow was the first one to speak when I went in that room. She asked me if I would sign her will. . . . When she asked me that I said, 'Certainly.' Then I went over to the stand in the front window, the bay-window, and signed it. . . . Mrs. Dow had just simply asked me if I would sign her will. She asked me if I would sign her will before she signed it. She said, 'Belle,' that is the name she always called me, 'Would you sign my will?' I said, 'Certainly.'" In response to a question of the court she repeated: ". . . The only thing she said was, will I sign the will, her will.

"Q. She didn't declare it to be her will in so many words? A. Didn't declare that it was. When she said, 'Will you sign my will?' I didn't see it just then. I saw it about a minute after. . . . I don't know where the document was at the time Mrs. Dow asked me if I would sign her will. She signed the document after she said to me, 'Will you sign my will?' Mrs. Dow signed the will, then a very short time after she said to me, 'Will you sign my will?'" When recalled by the proponents she testified as follows: "The Court: Mrs. Brush, are you quite positive that Mrs. Dow said to you, at the time or about the time she signed the will, 'Will you sign this will?' A. I didn't say at that time. This might have been a week before. I could not say just when. She said, if she made a will would I be a witness. I said 'Certainly.' I didn't say at that time. That was about a week before. Neither at the time it was signed nor before nor after it was signed by Mrs. Dow, did she ask me to sign it as a witness. No, sir, not at that time. She didn't ask me to sign her will at that time. She didn't say anything about its being her will at that time. Q. Did she ask Mrs. Kinsman to sign it? A. Mrs. Kinsman, I believe, brought the will in. I am not sure. Mrs. Kinsman asked her, said her brother had given her that paper and said it was a will, and asked if she could read the will, if she knew what it was, and she said 'Yes.' She asked her if she wanted to sign it. Mrs. Dow said, 'Yes.' That was about all I can remember that was said. Q. You are quite sure Mrs. Dow didn't ask you to sign the will? A. Not at that time; no, sir, not at that time. And she didn't ask Mrs. Kinsman to sign the will, I don't think so. That is my best recollection. She didn't ask me just before

she signed the will, 'Will you sign my will?' Not at that time; no, sir. You misunderstood me if you think I said at that time.''

It should be stated that at the time that the will was executed the testatrix was very ill; that Mrs. Kinsman, one of the subscribing witnesses, had been called as a nurse; that Mrs. Brush had been specially called for the purpose of witnessing the will. The will had been prepared during the morning at the request of the testatrix and had been read to her by her brother, and had then been typewritten, and was returned in the afternoon by the brother, who handed it to Mrs. Kinsman, the nurse, with the request that she have the will signed and that she witness the will. The will was then taken into the sick-room, the only persons present being the testatrix and the two subscribing witnesses. They were together in the room only about five minutes. The testimony of the brother, if accepted by the trial court, would justify the conclusion that both witnesses signed at that time in the presence of the testatrix. His testimony is to the effect that he looked into the room and saw Mrs. Kinsman sitting over a desk as though writing, and that the will was handed to him immediately upon being brought into the sick-room and was at that time in the same condition that it was when presented in court, i. e., signed by the two subscribing witnesses. The court, however, found that it was not signed by the witnesses in the presence of each other. Mrs. Kinsman testified that after Mrs. Brush, the other subscribing witness, had left the room, she remained in attendance upon the testatrix until about fifteen minutes had elapsed from the time she first entered the room; that she at that time took the will to Mr. Hanley, the brother of the testatrix, who had handed it to her and asked her to have it executed, and that he observed that she had not signed it, and requested her to sign it; that she re-entered the sick-room, sat down at a table within four or five feet of the testatrix, and signed the will and returned it to Mr. Hanley. The only question raised by the contestants with reference to this signing being in the presence of the testatrix grows out of the testimony of Mrs. Kinsman. At the time she re-entered the sick-room the testatrix was lying in bed with her eyes closed and she did not know whether or not the testatrix observed or had knowledge of the fact that she was signing the will as a subscribing witness. The atti-

tude of this witness was somewhat peculiar in connection with her signing the will. She testified that the first time she saw the will it was handed to her by George Hanley, the proponent. "He said, 'Mrs. Kinsman, it is a will of my sister's,' or 'that my sister has made,' or something to that effect, but anyway this was a will of hers. 'I have read it to her. She knows what it is. It is all right, but she has not signed it yet. Will you have her sign it?' And then he says, 'Mrs. Brush will be a witness.' I said, 'Very well,' and went and took it in to Mrs. Dow." She then said, when she took it to the testatrix to have it signed in the presence of Mrs. Brush and herself, "I just said to her, 'Your brother says this is a will, that he read it to you; do you know what it is—do you know how it is made out?' She said, 'Yes.' . . . I says, 'Is everything fixed as you want it?' I put it that way to her on account of a remark, a little talk that we had had before, several weeks before, about the will. She says, 'Yes.' I said, 'Do you want to sign it?' She said, 'Yes.' 'Do you want to sign it now?' She said, 'Yes.' I said, 'Very well, sign it there,' and then I pointed to it and put it on; it was turned, your honor, but it was turned—she signed it there. At the time of this conversation Mrs. Brush was at the foot of the bed, and I was at the side, and Mrs. Dow was up on the bed. When Mrs. Dow signed it, I took it from her; she didn't hand it to me. Absolutely nothing was ever said in the room." The witness then directed Mrs. Brush to sign as a subscribing witness, and she testified, "Then I took it and gave it to the brother. I knew how to direct Mrs. Brush where to sign this will because the next place was a space there to sign and I thought that Mrs. Brush should sign next. I didn't intend to sign it. There was still another place later on and I left it there. I didn't sign it because it was turned so I didn't know what I was signing, and I don't sign my name to something unless I know what I am signing it to. The brother said, 'Mrs. Brush will be a witness.'" She further testified: "When I first entered Mrs. Dow's bedroom to have Mrs. Dow execute this will I suppose I knew that I was to sign this will as a witness, but didn't intend to do it without knowing what it was about and know what it was. I have been a witness to wills before and the lawyer always read them before the party and before me and I knew what I was signing. I knew enough to ask

Mrs. Brush and indicate to her where to sign. As I understood, Mrs. Brush was an old friend of Mrs. Dow's. She was a stranger to me, and it mattered not to me who signed it." She further testified with reference to taking the will to the proponent after it was signed by the testatrix and Mrs. Brush: "I was carrying the document with pen and ink in my hand, because I took that out when I went out the first time, not intending to sign it unless I was asked the second time." She repeatedly testified, in effect, that when she handed the will to the proponent he said, "Mrs. Kinsman, you have not signed it." "I says, 'No.' He says, 'Will you?' 'If you wish.' I took it back in the room. The reason I didn't sign the first time was the paper was turned. I didn't know what I was signing, and I never sign anything unless I know what I am signing. Then I took it back and went into the room and went over to the table and signed it, and took it back to the brother. . . . When I went into the room, as I remember, Mrs. Dow had her eyes shut. She was very sick, as I told you." Again, on cross-examination, she testified: "When I went in to Mrs. Dow's room there was no one in the room besides Mrs. Dow and me. I closed the door when I went in there. Mrs. Dow had her eyes shut then. She was asleep as far as I know. I don't know whether she was asleep; she had her eyes closed though. . . . She may have opened her eyes. That I couldn't swear to, but her eyes were closed when I came into the room. I don't know whether she opened her eyes after I turned my back or not. I didn't speak to her at any time on this second occasion when I entered the room to sign the will, and she didn't speak to me at all on that occasion." When the witness was asked by the court whether she was prepared to say that the deceased could not have seen her sign the will she answered, "No, I am not prepared to; she might have, but I turned my back to her." The proponent, George E. Hanley, testified that when he first gave the will to Mrs. Kinsman he asked her if she would take it in and told her "that my sister wanted her to sign as a witness." Accepting the finding of the trial court upon this conflicting testimony, to the effect that Mrs. Kinsman did not sign the will as witness while Mrs. Brush was in the room, and taking the view most favorable to the proponent in support of the finding that the will was signed by the witness in the presence of the testatrix, we have this somewhat unique

situation: Mrs. Kinsman entered the sick-room with the will in her hand, having been requested to sign the same as a witness and knowing that it was expected by the testatrix that she would sign as a witness; that she prepared the will for the signature of the testatrix after having ascertained her intention to execute the will; provided the testatrix with pen and ink and secured her signature thereto and thereupon handed the will to the other subscribing witness, requesting her in an audible tone of voice in the presence of the testatrix to sign the same as a subscribing witness, and thereafter seated herself at the same table, with pen and ink in hand, and went through the motion of subscribing the same as a witness, and either did so sign after the other subscribing witness had retired from the room or purposely refrained from so doing for the reason that she did not feel herself sufficiently advised as to the contents of the document, and returned the document to the proponent, whereupon, again being requested to sign as a witness, she returned to the sick-room and in the presence of the testatrix and within a few feet of the bed actually signed the document and returned the same to the proponent. That the will was actually signed in the bodily presence of the testatrix is testified to by the very witness relied upon by the contestants to establish the fact that it was not signed in her presence, by reason of the fact that she was asleep or unconscious at the time it was signed. [2] The most that can be said in favor of the appellant on the question as to whether or not the subscribing witness, Kinsman, signed the will when the testatrix was asleep is that the evidence upon this point is so conflicting that the finding of the trial court upon the question is conclusive on this court. The evidence of the witness Hanley, if believed, would have justified the court in wholly disregarding the testimony of Mrs. Kinsman as to what occurred after the time she handed the will to Hanley on first leaving the sick-room. It is true that the express finding of the court that Mrs. Kinsman did not sign the will in the presence of the other subscribing witness justifies the inference that the court accepted the testimony of Mrs. Kinsman rather than that of Hanley as to the time when the will was signed by this subscribing witness, but in view of the testimony of Mrs. Brush that she did not see the will signed by Mr. Kinsman, and the uncontroverted fact that Mrs. Kinsman remained in the room after Mrs.

Brush retired therefrom, we cannot say that the court did not arrive at the conclusion that the will was signed by both witnesses before it was returned to Hanley, as he testified and wholly disbelieved the testimony of Mrs. Kinsman in relation to the time and circumstances under which she signed as a subscribing witness. [3] Moreover, it was the duty of the trial court to "closely scrutinize" the testimony of Mrs. Kinsman in so far as that testimony tended to discredit her solemn act of attestation. (*Estate of Tyler*, 121 Cal. 405, 413, [53 Pac. 928].) The most that can be said of the testimony of this witness adverse to the will is that she made no effort to attract the attention of the testatrix to the fact that she was about to subscribe the will as a witness; that she observed the eyes of the testatrix were closed and thereupon signed the will with her back to the testatrix without noticing or being able to testify whether the testatrix did or did not observe her act of signing. She returned the will to the brother, the principal beneficiary under the will, who had intrusted her with the direction of the execution thereof without notifying him that the testatrix was asleep or unconscious, and thus placed it entirely in her own hands to discredit or destroy the efficacy of the will by an inference wholly inconsistent with her position as a subscribing witness. Opposed to this we have the presumption that at the time of the execution of the will the deceased was of sound mind, a presumption which obtains during the entire process of the execution of the will in the absence of credible evidence to the contrary. [4] This presumption justifies the conclusion, in the absence of affirmative and credible evidence to the contrary, that the testatrix was neither unconscious nor asleep during the execution of the will. In view of the foregoing consideration the finding of the trial court that the witness Kinsman signed the will in the presence of the testatrix is conclusive on this court.

With reference to the question of whether or not the finding of the court that the will was signed by the subscribing witnesses at the request of the testatrix is correct, we have the attestation clause so declaring and the direct testimony of Mrs. Brush that at the time and place of the execution of the will the testatrix requested both of the subscribing witnesses to sign. It is true that on cross-examination she said that she did not intend to make this statement, but the record hardly

CLXXXI Cal.—8

bears out the latter statement. It also appears that she had been asked some time before by the testatrix to sign as a witness, and that Mrs. Kinsman, in the presence of the testatrix, requested Mrs. Brush to sign the will as a subscribing witness, and that she did so sign in the presence of the testatrix. " . . . [5] a request may be implied by acquiescence in the request of another that the will be signed." (40 Cyc. 1116.) Mrs. Kinsman was requested to sign the will as a subscribing witness by the brother, who had been intrusted by the testatrix with the preparation of the will, including, no doubt, the necessary formalities in connection with the execution thereof, and this request, he stated to Mrs. Kinsman, was so made by him at the instance of the testatrix. There is no direct testimony as to whether the testatrix did or did not request the brother to request Mrs. Kinsman to sign the will as a witness. The written declaration of both subscribing witnesses in the attestation clause, together with the facts and circumstances surrounding the execution of the will, and the evident desire of the testatrix communicated to the subscribing witnesses, justified the trial court in its conclusion that the will was attested by the subscribing witnesses at the request of the testatrix. (*Estate of Cullberg,* 169 Cal. 368, [146 Pac. 888]; *Estate of Silva,* 169 Cal. 120, [145 Pac. 1015]; *Estate of Clark,* 170 Cal. 422, [149 Pac. 828]).

Judgment affirmed.

Lennon, J., and Melvin, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank, the court filed the following opinion on September 22, 1919:

THE COURT.—In the petition for rehearing it is claimed that the decision in Department, in effect, overrules the decision by the court in Bank in the *Estate of Emart,* 175 Cal. 238, [L. R. A. 1917F, 866, 165 Pac. 707]. The distinction between that case and this seemed too obvious to require discussion. It is true in that case that the *witnesses* did not sign in the presence of each other. But the decision against the validity of the will was not based upon that fact, but upon the fact that both witnesses were not present together at the time

the *testator* signed or acknowledged his signature or published the will. In this case these formalities as to signing and acknowledgment by the testatrix were complied with, but one witness left the room before the other subscribed as a witness. If· it be said that the reasoning of the Emart case leads us to the conclusion that both witnesses should sign in the presence of each other, it is a sufficient answer to say that we are not disposed to follow it to that conclusion, which would place our law out of harmony with that of nearly every other state in the Union. (40 Cyc. 1121, note 70.) Moreover, if we assume that this· court is committed by the decision in *Estate of Emart* to the English interpretation of the Victorian Act therein referred to, it would appear from the note (13) to our decision in L. R. A. 1917F, 866, 877, that the English courts have held that under the latter act it is not essential that witnesses sign in the presence of each other. (See *In the Goods of Jane Webb,* 1 Jur. N. S. [Eng.] 1096.) To hold that the witnesses must sign in the presence of each other would be to write into the statute a requirement that is not there, and would be digging another pitfall for those unfamiliar with judicial decisions who rely upon what seems to be the plain letter of the code.

The application for rehearing is denied.

All the Justices concurred.