[Civ. No. 7038. Second Appellate District, Division One.—May 12, 1930.]

In the Matter of the Estate of FRANCIS NITA MINER, Deceased. CHARLES A. ROBERTS et al., Appellants, v. EMMA KENNEALY et al., Respondents.

D. L. Di Vecchio and Albert Picard for Appellants.

Frank G. Tyrrell and MacDonald & Thompson for Respondents.

HOUSER, J.—This is an appeal from an order by which a petition for the revocation of the probate of the will of Francis Nita Miner, deceased, was denied.

As stated by appellants, the sole question presented for consideration "is whether the will was acknowledged by decedent in the presence of the two witnesses, present at the same time."

The evidence which related to the acknowledgment of the will which was adduced at the hearing of the contest showed that on a certain date the testatrix signed and acknowledged the will in the presence of one of the witnesses thereto, who at the same time, as such witness, affixed her signature thereto. On the day following, while the second witness and the testatrix were in a bedroom in an apartment occupied by the latter, the testatrix showed the will to the second witness, who thereupon read the same. At that time and continuously thereafter during the alleged acknowledgment of the will by the testatrix, the first witness was either in the same room with, or in an adjoining room to, that occupied by the testatrix and the second witness. As testified by one of the witnesses, it was "only just a small apartment." The size of each of the rooms was approximately ten by thirteen feet. "It was very close quarters." The door between the two rooms was open and, with the exception that the first witness did not actually see the second witness attach her signature to the will, the first witness saw all that took place and heard all that was spoken between or among the persons then and there present. As stated by the first witness, she "had a good idea that she [the second witness] signed it."

In response to a question as to what she heard at the time the will was attested by the second witness, the first witness testified:

"Well, I believe after Mrs. Cotter [the second witness] had read the will, I believe Mrs. Miner said to her, 'What do you think of this?' or, 'What do you think about it?' or, 'What do you think of this will?' and Mrs. Cotter made some remark, that it was perfectly all right for her, it made no difference, if those were her wishes, something to that effect, and Mrs. Miner said, 'Those are my wishes, I want my two own sisters to have my property,' or words to that effect; I don't know, they may not be exactly just the same, but words to that effect that she said. . . . Well, I heard Mrs. Cotter ask her if she was going to leave anything to the half brothers, and she said, no."

In substance, the second witness gave identical testimony.

Primarily section 1276 of the Civil Code contains the rules which govern the execution and attestation of a will of the character of that here under consideration. As far as ap-

pears to be pertinent, the requirements are that there must be two attesting witnesses, each of whom must sign the same as a witness, at the end of the will, at the testator's request and in his presence; that the instrument purporting to be a will must be acknowledged by the testator to the attesting witnesses, "to have been made by him"; and that at the time of subscribing or acknowledging the will the testator must declare to the attesting witnesses that the instrument is his will.

In *Estate of Dow*, 181 Cal. 106, 115 [183 Pac. 794, 798], it is held that in the execution of an ordinary written will it is unnecessary that the subscribing witnesses sign their names in the presence of each other. In that connection, in part, the court said: "To hold that the witnesses must sign in the presence of each other would be to write into the statute a requirement that is not there, and would be digging another pitfall for those unfamiliar with judicial decisions who rely upon what seems to be the plain letter of the code."

No question is raised by appellants regarding the fulfillment of the statutory requirement to the effect that each of the witnesses to the will must subscribe his name thereto "at the testator's request"; in fact, it is conceded by appellants that in the execution of the will the testatrix complied with all statutory requirements, excepting only as to the acknowledgment by her to each of the attesting witnesses, "present at the same time," that the propounded instrument was her will.

In the *Estate of Silva*, 169 Cal. 116, 122 [145 Pac. 1015], and later, in the *Estate of Cullberg*, in the same volume, at pages 365, 368 [146 Pac. 888], where many authorities are cited in support of the doctrine there announced, it is ruled that in the execution of a will it is unnecessary that the testator in so many words declare the document to be his will, or that he expressly request the witnesses to sign it as such; but that, although such verbal declaration and request be lacking, they may be implied from the conduct of the testator and the attendant circumstances. To the same effect is decided in *Estate of Johnson*, 152 Cal. 778, 780 [93 Pac. 1015].

Supplementing the facts hereinbefore set forth, as well as repeating part of them, it appears that at the time in question the testatrix and the second witness to the will

went into a bedroom, where the testatrix produced from "a pocket-book . . . in a little desk in the corner" the document here propounded as her will and which theretofore, under the direction of the testatrix, had been prepared by the first witness, and which had been signed by the testatrix and attested by such first witness. Thereupon the testatrix requested the second witness to read the "paper," and that the first witness bring a .pen and ink, with which request the first witness complied. The testatrix then inquired of the second witness if she thought it (the will) was "all right"; to which inquiry the witness responded, "Well, it is all right, Nita, *if that is your wishes,* but wasn't you going to leave Frank and Charley?" To such question the testatrix replied, "No, 'she didn't want any of them to have any of her money, that she hardly knew them until a short time ago, that they were only half brothers and she wanted her two sisters to have her money.' " It also appears that at that time the testatrix stated that *"those are my wishes; I want my two own sisters to have my property."* The testatrix "said Mrs. Wilson [the first witness] had signed it while I [the second witness] was gone and they was waiting for me to come back to sign it." Thereupon the second witness attached her signature to the will. During all of such time, with the exception hereinbefore noted, the first witness saw or heard everything that was said or occurred as between the testatrix and the second witness. In such circumstances, it would seem impossible to place a construction upon the conduct of the testatrix other than as a declaration to the attesting witnesses, "present at the same time," that the instrument was her will.

The order is affirmed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 3, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1930.