[Civ. No. 2146. Fourth Appellate District.—February 1, 1938.]

In the Matter of the Estate of ISABELLA JACOBS, Deceased. R. N. CONN, Appellant, v. V. O. WALDECK et al., Respondents.

William H. Wylie and T. S. Hankey for Appellant.

Fred E. Lindley and J. L. Hofflund for Respondents.

MARKS, J.—This is an appeal from a judgment refusing to revoke the probate of the will of Isabella Jacobs, deceased. Her only surviving heirs at law are two nephews, one of whom is the contestant R. N. Conn. V. O. Waldeck, Margarete K. Waldeck, his wife, and Pearl Gotham are the legatees named in a will of deceased executed on August 5, 1935, and the San Diego Trust and Savings Bank is the executor. None of the legatees was related by blood to Mrs. Jacobs.

Mrs. Jacobs was about eighty-three years of age at the time she executed the will. She had suffered a hemorrhage of the brain about five years before and another slight one on August 1, 1935. On August 5, 1935, she was ill in bed but seemed to be mentally alert and in possession of her mental faculties.

The second amended petition to revoke the probate of the will alleged three grounds of contest: (1) mental incapacity; (2) undue influence of V. O. Waldeck; (3) failure to observe the required formalities in the execution of the will.

The evidence of the mental testamentary capacity of Mrs. Jacobs was so complete and convincing that contestant aban-

doned it as a ground of contest at the trial and does not raise it here.

■ Evidence of undue influence on the part of V. O. Waldeck or any other person is entirely lacking. This is tacitly admitted by contestant, who is driven to rely upon the inference of undue influence which may be drawn from the following: An unnatural or unjust will, and a confidential relationship between the testatrix and a beneficiary who actively participated in the preparation of the will through which he unjustly benefited.

It does not necessarily appear from the evidence that the will was either unnatural or unjust. Nephews are not necessarily the natural objects of the bounty of an aunt. While the beneficiaries were not related by blood to Mrs. Jacobs, they were her friends. They were kind to her and assisted and cared for her at the close of her life. Mrs. Gotham voluntarily acted as one of her nurses during her last illness. There is no showing of any friendly relationship existing between either of the nephews and Mrs. Jacobs. As far as the record discloses she might never have known of their existence.

A similar question was before the court in *Estate of Easton,* 140 Cal. App. 367, where at page 376 [35 Pac. (2d) 614], it was said:

"Contestants contend, however, that in any event the evidence is sufficient to establish a confidential relationship between Lucy Harnett and the testatrix, which gave rise to a presumption of undue influence legally sufficient to create a conflict in the evidence and thus sustain the verdict. We are unable to sustain this contention. The legal doctrine sought to be invoked is stated in the *Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768], as follows: 'Where one who unduly profits by a will sustains a confidential relationship to the testator and actively participates in procuring the execution of a will, the burden is upon him to show that the will was not induced by his undue influence. (*Estate of Shay,* 196 Cal. 355, 363 [237 Pac. 1079]; *Estate of Gallo,* 61 Cal. App. 163 [214 Pac. 496].).' But as indicated by the foregoing statement, such presumption is not generated alone by the existence of a confidential relationship. (*Estate of Presho,* 196 Cal. 639 [238 Pac. 944].) Such relationship 'assumes probative importance when disclosed in conjunc-

tion with the facts that the provisions of the propounded instrument are unnatural or unjust, and that the alleged wrongdoer was active in procuring the writing to be executed. If the facts of injustice and activity on the part of the wrongdoer are not established, a denial of probate cannot be sustained.' (26 Cal. Jur. 652, citing authorities.) In other words, to use the language of the Supreme Court: 'There must in addition be proof that the one occupying such relationship displayed activity in the preparation of the will to his undue profit' (*Estate of Presho, supra*), meaning that there must be proof that the will is unnatural. Moreover, it is well settled that collateral heirs, such as brothers and sisters, are not 'natural objects of bounty' as that term is used in the interpretation of wills, and therefore, in cases such as this, where the next of kin are collaterals and one or more are unprovided for in the will, the pretermitted persons, in order to establish that the instrument is unnatural, must show affirmatively that they had peculiar or superior claims to the decedent's bounty; and if no such claim is adduced, the instrument cannot be held to be unnatural. (26 Cal. Jur. 695, 696.) ''

■ If we assume, without holding, that the beneficiaries under the will occupied a position of confidential relationship to Mrs. Jacobs, still, under the circumstances before us, contestant would not be relieved of the burden of proving undue influence by a preponderance of the evidence. (*Estate of Presho*, 196 Cal. 639 [238 Pac. 944]; *Estate of Shay*, 196 Cal. 355 [237 Pac. 1079]; *Estate of Ross*, 117 Cal. App. 574 [4 Pac. (2d) 164].)

The will was not necessarily either unjust nor unnatural. None of the beneficiaries knew that Mrs. Jacobs was about to execute a will prior to the time she announced such an intention a few minutes before Dr. Crawford was called to write it. In calling Dr. Crawford, one of the proponents merely transmitted a message given by Mrs. Jacobs. The will was dictated by the testatrix to Dr. Crawford, who reduced the dictation to writing. Mrs. Jacobs fully understood the bequests which she made. She selected her beneficiaries. She was satisfied with the will she dictated. While the beneficiaries were in the room during the time the will was being dictated, written and executed, they were not there as actors but as passive observers. They were

present because Mrs. Jacobs wanted them there. Simply because they were present at the invitation of the testatrix at that time is not sufficient to establish undue influence. The evidence not only fails to show any undue influence on the part of Waldeck or any other person, it negatives any idea of undue influence. (*Estate of Ross, supra.*)

Contestant maintains that the evidence fails to show due execution of the will in the following particulars: (1) that the testatrix did not subscribe the will or acknowledge its subscription in the presence of both attesting witnesses; (2) that the testatrix did not declare to the witnesses that it was her will; (3) that the subscribing witnesses did not sign the will at the request of testatrix and in her presence. (Subds. 2, 3, and 4, sec. 50, Probate Code.)

The evidence favorable to proponents, which is all we need consider here as it was adopted by the trial judge as true, may be summarized as follows: that on the evening of August 5, 1935, Pearl Gotham was caring for Mrs. Jacobs pending the arrival of the regular nurse; that Mrs. Jacobs said she wanted to make her will and asked that Dr. Crawford, her physician, be called to write the will; that she was told of the necessity for witnesses; that when witnesses were discussed one of the proponents said, "We might get Mr. Dixon, will that be all right?", to which Mrs. Jacobs replied, "Yes, that will be all right;" that Mr. Dixon, a neighbor, was called. Mr. Dixon described the events as follows:

"A short time after I stepped in Mrs. Jacobs' room, Dr. Crawford came; I was standing at the foot of her bed, about three feet back, I should say; Mrs. Jacobs was talking to the doctor about a will, and she asked him to make it out; I think that is the words she used; not too sure; but I think that is it; it is rather hazy; the doctor procured a piece of paper, and the doctor asked her what she wanted said, and the doctor wrote the will—a short document; after Dr. Crawford wrote the will, he read it to Mrs. Jacobs; Mrs. Jacobs then said, "That is all right; I will sign it;' she signed it; the doctor handed her the paper back and gave her his fountain pen and she signed it; I saw her; I moved a little further back towards the door that is mentioned here, but I saw her sign the will; after that Dr. Crawford reread the will, and then came to the foot of the bed and asked

me to go to the little table that was there, and we both signed the will; at this table; this table was just through a door in another room; it was a full size door, and the table was right in front of the door; very close to the door; I could see Mrs. Jacobs; she was then sitting up in bed; after the doctor signed the will we both got up from the table; I turned around in the doorway, and the doctor took the document to Mrs. Jacobs and read it; she said 'that is all right'; Doctor read it in full, with the names of the witnesses; Mrs. Jacobs said 'that is all right' or words to that effect, that is the best I can remember; when that occurred I was standing in the doorway ready to go; I left the house immediately; . . ."

Contestant does not contend that Mrs. Jacobs signed the will out of the presence of Dr. Crawford, one of the subscribing witnesses. Dr. Crawford wrote the will and testified that she dictated it to him; that he read it over to her after it was reduced to writing; that she said, "Yes." "Thank you." Both subscribing witnesses testified the will was signed by Mrs. Jacobs in their presence.

Evidence weaker than that which we have here has been held to constitute (1) a sufficient publication of a will by the testatrix; (2) a sufficient request to the witnesses to subscribe their names to the will as witnesses, and (3) a sufficient subscription of the will by the witnesses in the presence of the testatrix. (*Estate of Silva*, 169 Cal. 116 [145 Pac. 1015]; *Estate of Cullberg*, 169 Cal. 365 [146 Pac. 888]; *Estate of Dow*, 181 Cal. 106 [183 Pac. 794]; *Estate of Offill*, 96 Cal. App. 640 [274 Pac. 623]; *Estate of Miner*, 105 Cal. App. 593 [288 Pac. 120].)

There is some conflict in the evidence caused by the testimony of the beneficiaries of the will who placed Mr. Dixon on a screen porch looking into the bedroom where Mrs. Jacobs lay while she was giving directions for the terms of her will, while Dr. Crawford was writing it and while he was reading it for the first time, and when it was subscribed. According to these witnesses the bedroom was small and Mr. Dixon was but a few feet from Mrs. Jacobs during this time and within sight and hearing of her. This does not create a substantial conflict in the evidence that could affect the results, as under the holding in *Estate of Miner, supra*, he was then in her presence.

Assuming that this evidence did create a substantial conflict, the trial judge was not bound to accept the testimony of the beneficiaries as true and disregard the evidence of Mr. Dixon, as the proponents were only giving a narrative account of the events as they remembered them. A similar contention was made in the case of *Johnson* v. *Johnson*, 137 Cal. App. 701 [31 Pac. (2d) 237], where it was said:

"It is argued that the respondent is bound by his own testimony, that this testimony is essentially the same as that given in support of this appellant's theory, and that the respondent may not recover against this appellant regardless of any other evidence which appears.

"It may first be observed that while it has usually, if not always, been held that the rule contended for applies where a party to an action testifies to some fact peculiarly within his own knowledge or where he makes an admission, there is very good authority for refusing to apply the rule in a case where a party, instead of making an admission or testifying as to a fact peculiarly within his knowledge, is merely giving a narration of how something occurred as the same appeared to him. (*Hill* v. *West End St. Ry. Co.*, 158 Mass. 458 [33 N. E. 582]; *Whiteacre* v. *Boston Elevated Ry. Co.*, 241 Mass. 163 [134 N. E. 640]; *Kanopka* v. *Kanopka*, 113 Conn. 30 [154 Atl. 144, 80 A. L. R. 619].) . . . Under any theory of the case, the question was one of fact for the jury."

The proponents of the will urge other reasons why the judgment must be affirmed. In view of what we have already said it is unneccessary to consider them.

The attempted appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed. Respondents will recover their costs of appeal.

Barnard, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 31, 1938.