[Civ. No. 14534. Second Dist., Div. Three. Jan. 11, 1945.]

Estate of MARY A. DEL FOSSE, Deceased. KATE HILDEBRAND et al., Appellants, v. JAMES B. HUDSON, as Executor, etc. et al., Respondents.

Samuel A. Miller and Donald Keith for Appellants.

Julius V. Patrosso, Catlin & Catlin and Frank D. Catlin for Respondents.

DESMOND, P. J.—On October 13, 1942, the last will and testament of Mary A. Del Fosse was admitted to probate and James B. Hudson, proponent of the will, appointed executor without bond in accordance with its terms. Some months later a contest was filed by two elderly aunts of decedent, her only heirs at law, praying that the probate of the will be set aside. This the court, sitting without a jury, refused to do, and from the judgment denying the petition for revocation and decreeing that the will was in all respects legal and valid this appeal is taken. An appeal is also claimed from the order of the probate court by which a new trial was denied, but such an order is not appealable under the law (Code Civ. Proc., § 963; Prob. Code, § 1240). The contest was answered by the executor and by George T. Schwemer, principal beneficiary under the will.

Mrs. Del Fosse, aged approximately seventy-five years, died in the city of Los Angeles on September 19, 1942, leaving an estate appraised at $22,702.70. Her will, executed three days prior to her death, namely, on September 16, 1942, made no provision for contestants and all the beneficiaries named therein were unrelated to decedent. She declared in her will that she was a widow and had no lineal issue, but had taken George T. Schwemer into her home and treated him as her son and "therefore make provision herein for him." After the usual directives concerning the payment of debts, Schwemer was given by the will the decedent's automobile and one of her diamond earrings, several other specific legacies were left to personal friends and the residue of the estate bequeathed to "James B. Hudson, in trust, to hold, manage and distribute as hereinafter provided." He was directed to pay from the principal and income "the sum of Fifty Dollars each month to the said George T. Schwemer, so long as he shall live." The will further provided:

"The purpose of this trust is not to maintain the beneficiary [Schwemer] in idleness but to aid and assist him in developing his talents and ability to the greatest extent. It is my one request that he not be or become addicted to the habitual use of drinking intoxicants, in which event he is to receive nothing hereunder.

"In the event of disability, sickness or injury of the said George T. Schwemer, and the payments from this trust be insufficient, in the judgment of the trustee, to provide him with reasonable support, care and comfort, then the trustee

may pay to, apply or expend for his use and benefit so much of the principal as in the discretion of the Trustee may be advisable.

"Upon the death of George T. Schwemer . . . prior to full distribution of the trust estate as herein provided, or upon his failure to become entitled to the benefits hereof by reason of becom*m*ing addicted to drink so as to bring discredit to himself, the Trustee shall distribute the trust estate as follows:

"To George Lester Hudson, the adopted son of my good friend and attorney, James B. Hudson, to be distributed as in the judgment of Trustee may appear best."

Two grounds of contest, testamentary incapacity and undue influence allegedly practiced upon decedent by respondent James B. Hudson, were set forth in the petition to revoke probate, but it was upon the latter ground only that contestants relied at the time of trial, the claim of incapacity apparently having been abandoned, no attempt being made to support it by evidence. The allegations in support of the undue influence charge were that decedent was "coerced into signing" the will by the "undue influence" and "false and fraudulent representations" of James B. Hudson "in that . . . Mary A. Del Fosse was confined to a hospital on the 16th day of September, 1942, preparatory to a major surgical operation"; that Hudson had "acted as her attorney and was in a confidential relationship with her and took advantage of her illness and mental weakness in order to have his adopted son named as the chief beneficiary of said will, and further, that said James B. Hudson as a result and by reason of his fiduciary'relationship with said Mary A. Del Fosse caused himself to be named as Trustee to determine whether said estate should be used for the beneficiary George T. Schwemer or for his own adopted son"; that decedent "did not know what she was doing or what kind of instrument she was signing, but that said James B. Hudson taking advantage of the relationship of attorney and client between himself and said Mary A. Del Fosse prepared a document which was signed by said Mary A. Del Fosse without her knowing the terms or contents thereof, and that thereby and not otherwise the said Mary A. Del Fosse was induced to execute the said pretended will."

The only evidence introduced by appellants with reference to the facts surrounding the actual execution of the will was elicited from respondent Hudson under section 2055, Code of

Civil Procedure. This evidence was not contradicted. It was to the effect that Hudson had known Mrs. Del Fosse personally for twenty years, had been her banker for ten years, and her attorney for three or four years prior to the execution of the will; that the first time Mrs. Del Fosse discussed the making of her will with him was on Sunday, September 6th, 1942, when she called him to her residence; that she told him she contemplated a trip to the hospital and wanted to make a will, and that she wanted ''to give it all to 'Timmie','' a name which she customarily used in referring to Schwemer, but ''didn't want him to receive the entire estate at one time''; that a trust was discussed and she said she wanted ''Timmie'' to receive ''possibly a hundred dollars a month''; that he asked her if she wanted the Bank of America to be the trustee and ''she said, yes, she thought so''; that he then told her he would outline a proposed form of a will and would return within a few days and discuss it with her; that on the following Wednesday or Thursday, September 9th or 10th, he took a proposed draft of a will to Mrs. Del Fosse and discussed it with her; that this proposed draft named the bank as executor-trustee, allowed ''Timmie'' a sum of $100 per month and contained specific legacies to Dr. Christensen, her physician, and R. E. Wilson; that this draft was rejected by Mrs. Del Fosse because she desired to add some more specific gifts and wanted him [Hudson] to handle the matter personally; that ''she didn't want the bank interested in it at all''; that because Hudson ''was personally interested in 'Timmie','' having known him personally for approximately fifteen years, she wanted him to ''act as the trustee and take charge of the estate to see that Timmie was cared for,'' although Hudson told her he would prefer that she retain the bank as executor-trustee since he could represent the bank as attorney; that at her suggestion, he was to act without bond; that at this meeting Mrs. Del Fosse discussed a provision relating to intoxicating liquors, to the use of which she strongly objected; that she said the ''one thing she would not stand for, was his [Schwemer's] drinking; and she wanted a provision in the will that if he became a habitual drunkard or became addicted to liquors, that he was to be denied any beneficial interest under the will.'' Mrs. Del Fosse at this time stated, according to Hudson, that ''she wanted George Hudson, my son'' to be ''the ultimate beneficiary''; that when Hudson asked her if ''she didn't have some relatives,'' she stated she had

"nothing closer than an aunt . . . That her relatives were well provided for." Mr. Hudson testified that he had never suggested to Mrs. Del Fosse that she make provision in her will for his adopted son.

He testified further that he prepared a second draft of a will but before he had an opportunity to present it decedent called him on the telephone and made another change in the specific legatees; that he next saw Mrs. Del Fosse on Tuesday the following week, September 15th, on the street outside his office, accompanied by John Cosgrove, a legatee under the will; that she told him she was going to the hospital, gave him some specific instructions about business matters, including directions concerning an auto court which she operated, and asked him if the will was ready for her signature; that he told her it was not, that it hadn't been completed with particular reference to the paragraph providing for the ultimate beneficiary of the trust in the event that Schwemer didn't become entitled to it or upon his death before the exhaustion of the trust. Hudson stated that he told Mrs. Del Fosse that he "wasn't satisfied" that she had properly given him "instructions with reference to that; in other words, I had hesitated about putting my son's name in there. . . . She said that 'I think you know me well enough that when I tell you anything, you know I mean it.' I said, 'All right; if that is what you want, that's what I'll do''; that on the same day, September 15th, between 4 and 5 o'clock in the afternoon, he again saw Mrs. Del Fosse, this time at the Glendale Sanitarium; that after she read the will she decided to make "two more changes . . . she wanted Mrs. Hudson to have a brooch that was in her safe deposit box [subsequently appraised at $30.00], and . . . John Cosgrove to have $500 in cash"; that these two latter legacies had not appeared in any of the prior drafts; that he told her "it would necessitate redrafting the will . . . She said that was quite all right; she was there for X-rays for a few days, anyway"; that he told her he would return in the morning with the will.

With reference to the actual execution of the will, Hudson testified that a little after 9 o'clock in the morning of the following day, September 16th, he presented the final draft of the will to Mrs. Del Fosse at the hospital. She "sat up in bed, read the will and said it was just what she wanted; . . . I asked her if she was ready to sign it. She said yes. I told

her I would step out and see if I could get a couple of nurses to witness it. I went out to the hall, and two nurses came back with me. I asked Mrs. Del Fosse in their presence if she had read the will, or if she had read this instrument and if this was her last will. She said yes. I asked her if she wanted these girls to witness her execution of the instrument and she said she did. She signed the instrument and they signed it all in the presence of we four. They left the room, and she and I had further conversation about other business matters, about Timmie, as I recall. She put the will away in her purse—she had a large purse of some kind—and I left the hospital''; that on the following morning, September 17th, he called upon Mrs. Del Fosse again, this time in response to a telephonic request; that she stated ''they had determined that she needed an operation; and she was going to the operating room that morning and she wanted me to arrange for some money'' with which to pay the hospital; that he acted pursuant to her instructions; that at this time she turned over the will to him.

■ An attempt was made by counsel for contestants to impeach the testimony of Hudson concerning the matter of his being named as executor-trustee without bond in place of the bank and the naming of his adopted son as contingent beneficiary. Hudson had testified, as we have indicated, that this change was made after he discussed the first draft of the will with Mrs. Del Fosse on the second visit to her home and that these particular provisions were contained in all the drafts subsequently submitted or discussed with her. Upon being asked to produce these drafts, Hudson testified that since they were not used they had been destroyed. One of appellants' counsel took the witness stand and testified (it being stipulated that his colleague and appellants' other counsel would also so testify) that ten days previously, at a meeting held in the offices of respondent's attorney, Hudson stated that the first three drafts contained the name of the bank as trustee and executor and it was not until the final will was drawn that his name, as executor and trustee, and his adopted son's name, as contingent beneficiary, appeared for the first time. It is apparent that the trial judge determined this conflict in the evidence in favor of Hudson's version and under the circumstances we may not question his decision on the point. (27 Cal.Jur. 186; 2 Cal.Jur. 926.)

In order to avoid a will on the ground of undue influence there must be an actual showing of some sort of pressure which overpowered the mind and mastered the volition of the testator at the very moment of execution. (*Estate of Burns* (1938), 26 Cal.App.2d 741, 749 [80 P.2d 77]; *Estate of Clark* (1915), 170 Cal. 418, 424 [149 P. 828]; *Estate of Carithers* (1909), 156 Cal. 422, 428 [105 P. 127]; *Estate of Gleason* (1913), 164 Cal. 756, 765 [130 P. 872]; *Estate of Lavinburg* (1911), 161 Cal. 536, 543 [119 P. 915].) There was no showing of that sort in this case and the evidence indicated that Mrs. Del Fosse was a good business woman active until the time of her death in operating her auto court, a partnership enterprise; that she had named the beneficiaries of her will without the help or suggestion of any of the beneficiaries, the principal beneficiary, Schwemer, being absent and in the armed forces of the United States at the time of the drafting and execution of the will; that she was possessed of all her faculties at the time she signed the will; that at the time of the execution she was not under the influence of any drugs or narcotics; that she read the will and declared that "it was just what she wanted"; that she kept it overnight and had an opportunity, not only to reread it but to change any provisions which she might have found unsatisfactory.

Appellants argue that since a confidential relationship existed between Mrs. Del Fosse and Hudson and since "he was active in the preparation of the will" and "stands to gain considerably . . ." the presumption of undue influence arises and the burden is upon him to rebut that presumption. That a confidential relationship existed between Mrs. Del Fosse and Hudson is not denied, but this fact alone does not create a presumption of undue influence. (*Estate of Burns, supra,* 26 Cal.App.2d 741, 749; *Estate of Presho* (1925), 196 Cal. 639, 651 [238 P. 944]; *Estate of Arnold* (1940), 16 Cal.2d 573, 581 [107 P.2d 25]; *Estate of Purcell* (1912), 164 Cal. 300, 303 [128 P. 932]; *Estate of Higgins* (1909), 156 Cal. 257, 261-262 [104 P. 6]; 26 Cal.Jur. 652.) Nor is the fact that he was named executor-trustee sufficient to raise the presumption (*Estate of Kilborn* (1912), 162 Cal. 4, 11 [120 P. 762]). Nothing in the record indicates that Hudson was active in procuring the will or that he obtained any enrichment thereunder. Mrs. Del Fosse's reasons for establishing the trust were fully explained as were the circumstances

surrounding the nominating of Hudson as executor-trustee and the naming of the principal beneficiary and contingent beneficiary. ▉ The will is not an unnatural one and the fact that she made no provision therein for her aunts does not, of itself, render it so, for collateral heirs are not, because of such relationship alone, "natural objects of bounty" in the absence of evidence showing that they have peculiar or superior claims to decedent's bounty. (See *Estate of Jacobs* (1938), 24 Cal.App.2d 649, 651 [76 P.2d 128]; *Estate of Nolan* (1938), 25 Cal.App.2d 738, 742 [78 P.2d 456]; *Estate of Easton* (1934), 140 Cal.App. 367, 377 [35 P.2d 614]; *Estate of Finkler* (1935), 3 Cal.2d 584, 597 [46 P.2d 149]; 26 Cal.Jur. 695-696.) Mrs. Provost, the only contestant to testify at the trial, did not offer any testimony to establish or show any close or intimate relationship between herself and Mrs. Del Fosse. George Schwemer testified that when he resided with Mrs. Del Fosse during the six or seven years prior to the time when he was inducted in the army he could remember only "one occasion" when Mrs. Provost visited with Mrs. Del Fosse at her home and another when "she came by once in a car." Mrs. Hildebrand, the other contestant, did not take the witness stand and no evidence was offered to show that she ever visited or was on friendly terms with Mrs. Del Fosse or even knew of her existence. It is reasonable to conclude that under the circumstances Mrs. Del Fosse intended to omit her aunts from her will because they "were well provided for."

▉ Since, contrary to the argument of appellants, no presumption of undue influence arose in this case, the burden of proving, by a preponderance of the evidence, the charges made in their pleadings was upon the appellants. The record indicates that they failed to carry that burden.

The judgment is affirmed and the purported appeal from the order denying motion for new trial is dismissed.

Shinn, J., and Wood (Parker), J., concurred.